IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**PERRY HART and wife REBA HART,**

     Plaintiffs-Appellants,

                                   Chester Chancery No. 8721

Vs.                            C.A. No. 02A01-9602-CH-0036

**TOMMY CASEY,**

     Defendant-Appellee,

**JO ALICE CASEY, FIRST NATIONAL
BANK OF JACKSON, EMC MORTGAGE
COMPANY AND WESTERN UNITED
ASSURANCE COMPANY,**

     Defendants.

FILED

Dec. 23, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

_____

FROM THE CHESTER COUNTY CHANCERY COURT
THE HONORABLE JOE C. MORRIS, CHANCELLOR

Ricky L. Wood of Parsons
For Plaintiffs-Appellants

J. Alan Rheney and Jonathan O. Steen
Spragins, Barnett, Cobb & Butler of Jackson
For Defendant-Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HERSCHEL P. FRANKS, JUDGE**

     This appeal involves a "land sale - purchase agreement" between Perry Hart and wife,

Reba Hart (Buyers) and Tommy Casey (Seller).[1] Buyers appeal from the judgment of the trial court finding that the "land sale - purchase agreement" between the parties had been terminated and ordering that Seller was the owner of the property.

Buyers' complaint, filed October 12, 1994, alleges that by virtue of a "land sale-purchase agreement" attached as an exhibit to the complaint, they purchased a tract of real estate as described from defendant, Tommy D. Casey. Buyers' aver that the property was encumbered by a deed of trust executed by Seller to Jackson National Bank and subsequently assigned to EMC Mortgage Corporation and later assigned to Western United Life Insurance Company. The complaint avers that Buyers spent approximately $15,000.00 for extensive repairs and remodeling which were completed in 1992. They aver that on July 27,1994, they received a letter from Seller that the 1993 property taxes had not been paid and that the July rent owed under the contract was past due. At that time, Seller invoked a late charge of $84.00. Buyers allege that on July 21, 1994, they tendered to Seller three checks in the total amount of $602.00 to pay for the 1993 taxes, July rent, and the late charge, and further aver that when they received their bank statement on July 26, 1994, they discovered that the three checks had been returned for insufficient funds. Buyers allege that they asked the Seller, through his secretary, to redeposit the checks, and that they were told that the checks would be redeposited. Buyers heard nothing from Seller until they received a letter from Seller's lawyer on or about August 11, 1994, informing them that Seller was taking possession of the property because Buyers had failed to pay the 1993 property taxes and had defaulted in making the monthly rental payments.

The complaint further avers that Buyers tendered their August rent check to Seller which was refused by letter of August 17th from Seller's attorney. They allege that they made all monthly payments required under their contract except for the July and August 1994 payments which were tendered to Seller but were refused. Buyers allege that after their rental payments were refused, they notified Seller that they wished to prepay the balance due under the contract

[1]The complaint also names as defendants Tommy Casey's wife, Jo Alice Casey, First National Bank of Jackson, EMC Mortgage, and Western United Assurance Company, but no relief was sought as to these defendants. The judgment disposes of all issues for which relief is sought, and these additional parties are not involved in this appeal.

as provided therein, but that Seller refused this request and advised Buyers that he had taken possession of the property pursuant to the terms of the contract, and that the contract was terminated.

The complaint alleges that a course of dealings had been established between the parties for late payments, and that Buyers were allowed to cure defects on previous occasions, and that they relied upon this course of conduct. Buyers aver that they had spent a great deal of money on the property, that the property is worth approximately $60,000.00 to $65,000.00, and that a forfeiture would be a gross injustice and would cause them immediate and irreparable harm. The complaint prays for a temporary restraining order to restrain Seller from taking possession of Buyers' property pending a hearing on the merits, and that Buyers be awarded possession and Seller be found in breach of the contract. Buyers also seek damages, both compensatory and punitive.

The trial court issued a temporary restraining order restraining Seller from taking possession of the property, or from in any manner disposing of or encumbering the property, or from interfering in any manner with the possession of Buyers.[2]

Seller's answer to the complaint admits that Buyers were in default under the contract and admits that Seller terminated the contract. Seller alleges that he operated under the terms of the contract, and he denies that Buyers are entitled to any of the relief sought. By way of counter-claim, Seller alleges that Buyers were habitually late in their payments and other obligations and allowed the insurance on the property to lapse, and that they were warned concerning breaches on numerous occasions. Seller avers that when the three checks given in payment of the delinquent sums heretofore set out were returned for insufficient funds, he declared the contract in default, and that Buyers had no further rights under the contract. The counter-complaint seeks a declaration that Buyers were in default under the agreement and that their rights and interest in the real estate be declared null and void. Seller also seeks damages

---

[2]The record does not indicate any further action concerning the temporary restraining order, nor any effort seeking a temporary injunction pending the hearing of the case. The proof in the record indicates that the property has remained vacant, and apparently neither party has attempted to occupy or otherwise take possession of the property. The restraining order expired fifteen days after its issuance on October 12, 1994. Tenn.R.Civ.P. 65.03 (5).

occasioned by Buyers' breach of the agreement.

The land sale-purchase agreement provides that Buyers purchased the property for $31,000.00, with the sum of $6,000.00 paid at the time of execution of the contract. The balance of the purchase price of $25,000.00 was to be paid in 225 equal monthly installments at a rate of interest that could be changed by the Seller as provided in the agreement. The contract provides that when the entire indebtedness is paid, Seller is to prepare and deliver a warranty deed conveying fee simple title to the Buyers free and clear of all encumbrances except for current taxes. The provisions of the contract pertinent to the issues before us are as follows:

1. As above recited, the purchase price for the above-described real estate is the sum of Thirty-One Thousand Dollars ($31,000.00). The sum of Six Thousand Dollars ($6,000.00), is paid on said purchase price at the time of the execution of this contract. The balance of said purchase price in the sum of Twenty-Five Thousand Dollars ($25,000.00), will bear interest from and after date at the rate of 12% per annum, to be amortized and paid by 225 equal, monthly installments of $280.00 each, these installments being due and payable successively on the 1st day of each consecutive month, beginning November 1, 1989. Anything above to the contrary notwithstanding, it is understood and agreed by and between the Buyers and the Seller that the rate of interest of 12% to be charged and paid as aforesaid on said future advances shall be for a period of six (6) months from this date and at the end of such six month period, the Seller shall review the rate of interest charged and shall increase the rate of interest, decrease the rate of interest, or allow the same to remain as it is, and shall continue such semi-annual review until the entire amount of principal and interest due hereunder shall be paid in full. Buyers are granted the right to prepay the entire unpaid balance or any part thereof prior to maturity, in which event the amount thus paid will first be applied to the payment of accrued interest and the remainder thereof will be applied to and in reduction of the principal.

2. In the event of a default in the payment of any of the above-mentioned installments as the same mature from time to time, then the entire unpaid balance may, thereupon, be declared due and payable forthwith, at the option of the Seller. A failure to exercise such option from time to time will not constitute a waiver of the right to exercise the same in the event of future and additional defaults.

3. In the event any installment payment remains unpaid for as long as fifteen (15) days after its due date, and the Seller does not declare the entire indebtedness due and payable forthwith as provided in paragraph 2, then there shall be a late charge of five per cent (5%) of such payment in default.

\*　　　　\*　　　　\*

5. The Buyers agree to keep this property insured in both the names of the Buyers and Seller, as their interests may appear, and agree to pay the taxes assessed against said real estate for 1990 and thereafter, and will not suffer any of such taxes to become delinquent at any time.

*   *   *

7. In the event the Buyers should fail to keep the property insured, the taxes paid as aforesaid, such may be deemed an event of default, and if not corrected by the Buyers, within a period of thirty days after notice by the Seller, the Seller, in addition to any other rights and remedies which he might have at law or equity, shall have the right to declare this contract terminated and of no further force, effect or virtue, in which event the Buyers agree to surrender up the premises to the Seller without any resort to legal processes and the Seller will have the right to reoccupy the above described premises as the lawful owner thereof, as any equity which Buyers may have in such property will terminate at the time Seller exercises such rights.

*   *   *

9. No major alterations may be made to the house or lot without the express written consent of the Seller.

10. In the event the Buyers should fail to comply with the terms of this agreement, or in the event the premises are vacated prior to the expiration of the term of this contract, or should fail to pay the entire unpaid balance of the purchase price when the same is required to be paid hereunder, such amounts as Buyers have paid Seller theretofore may be retained by the Seller as liquidated damages, and no part thereof shall be refundable to the Buyers.

There are very few factual disputes. By letter dated July 21, 1994, Seller advised Buyers as follows:

Dear Mrs. Hart:

In reference to your Land Sale-Purchase Agreement dated 10-11-89 on property located at 244 E. Main St., Henderson, Tn., I'm hereby enforcing interest review in item No. 1 and also #3 concerning a 5% late charge as of Feb. 1, 1994 due date. The new interest rate will be 14% with a payment of $309.69 beginning August 1, 1994.

On item no. 3 concerning 15 days past due, which you have been conscientiously past due since the beginning, I'm only enforcing past due status for 1994 in the amount of $84.00, which should be paid immediately. You are currently due for 7-1-94, as of this date you are 21 days past due and this has been conscientiously from the beginning. Plus the 1993 taxes also haven't been paid, the amount due on this is $238.08. Unless this is caught up to date and agreement to be enforced I'll consider the contract Null and Void and take the property back.

5

I need to hear from you by 8-1-94 as to your decision.

Sincerely,

Tommy D. Casey

In response to this letter, Buyers sent three checks totaling $602.08 as requested in the letter. They were returned for insufficient funds by Buyers' bank. Plaintiff, Reba Hart, testified that when she learned of the returned check, she called Seller's office and requested that the checks be redeposited. It was her understanding from her conversation with Seller's secretary that the checks would be redeposited. On the other hand, Seller's secretary, Ms. Webster, testified that although she talked by telephone to Ms. Hart, she did not tell her that the checks would be redeposited. Ms. Webster stated that she merely told Ms. Hart that she would relay the request for redeposit to Seller, Tommy Casey.

Ms. Hart took no further action to cure the default. She testified that she received no further notice from Seller until she received a letter dated August 11, 1994, which states:

> Re: Property located at 244 East Main Street, Henderson, Chester County, Tennessee
>
> Dear Mrs. Hart:
>
> This letter will serve as notice to you that Mr. Tommy D. Casey is exercising his right to retake possession of the above referenced premises which is the subject of a certain Land Sale-Purchase Contract executed by you and Mr. Casey on October 11, 1989. Mr. Casey is retaking the property as a result of your default in the monthly payments and payment of the taxes, as required by the terms of the contract, evidenced in part by the return for insufficient funds of your three checks, nos. 1774, 1775 and 1776, in the aggregate sum of $602.08, copies of which are attached hereto.

Before the August 11, 1994, letter was received, Buyers had sent the August rental check which apparently crossed in the mail with Seller's August 11, 1994 letter. Seller refused to accept this check and returned the check to Buyers by letter dated August 17, 1994, from Seller's attorney. Subsequently, Buyers' attorney, by letter of August 31, 1994, notified Seller of Buyers' wish to prepay the entire indebtedness as provided in the contract. Seller's attorney notified Buyers' attorney that this could not be done since they had no right to prepay because the contract had been previously terminated. Buyers' proof established that they were financially able to pay the indebtedness in full at the time they requested the payoff statement.

6

Ms. Hart testified that at the time suit was filed, the principal balance due Seller was $22,710.00, and the fair market value of the property was $60,000.00 to $65,000.00. Mr. Casey testified that the fair market value of the property was $31,000.00.

At the conclusion of the evidentiary hearing on October 11, 1995, the chancellor took the case under advisement, and on November 15, 1995, entered judgment, which provides:

> This cause came on to be heard upon the 11th day of October, 1995, before the Honorable Joe C. Morris, sitting without the intervention of a jury, and the Court after hearing all of the evidence in the case, stipulations of counsel, and after due consideration thereof, is of the opinion that the evidence does not preponderate in the favor of the contentions of the Plaintiffs;
>
> The Court is further of the opinion that the land contract entered into between the parties on October 23, 1989, has been terminated due to late payments, improvements made without the permission of the owner, and failure to properly insure; it is therefore
>
> ORDERED that the land contract entered into between the parties on October 23, 1989, is terminated along with all the Plaintiffs' rights to the property, legal or equitable, and that the Plaintiffs take nothing, and this cause be dismissed with prejudice.
>
> IT IS FURTHER ORDERED that the Temporary Restraining Order entered in this cause on the 12th day of October, 1994 is hereby dissolved and shall have no further force and effect.
>
> IT IS FURTHER ORDERED that the Defendant Tommy Casey is now the owner of the property, which was the subject of the land contact, free and clear from any claims of the Plaintiffs Perry Hart and wife, Reba Hart, and that the Counter-Complaint be dismissed with prejudice.

Buyers have appealed and present two issues for review which, as stated in their brief, are:

> 1. Whether the Chancellor erred in finding that the Land Contract entered into between the parties was terminated due to late payments, improvements made without permission of the owner, and failure to properly insure.
>
> 2. Whether the Appellants had the right to pre-pay the Contract at any time, even after default.

We will consider these two issues together. The principle issue to decide is whether under the terms of the contract, Buyers had a right as of August 31, 1994, to pay off the indebtedness owed Seller.

The cardinal rule in construing contracts is to ascertain the intent of the parties. *West v.*

7

*Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. App. 1984). In construing contracts the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning, and in the absence of fraud or mistake a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990). A duty devolves upon a court to enforce a contract in accordance with its plain terms and to consider the entire contract in determining the meaning of any or all of its parts. *Cocke County Bd. of Highway Comm'rs v. Newport Utilities Bd.*, 690 S.W.2d 231 (Tenn. 1985).

In their first issue, Buyers assert that the trial court erred in finding that the contract was terminated due to late payments, improvements made without permission of Seller and failure to properly insure. Since the trial court heard this case sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13 (d).

As to the improvements to the property, the contract provision prohibits "major alterations" without Seller's permission. The proof is that Buyers made repairs, but there is no detailed proof in the record as to major alterations. Moreover, the record establishes that Buyers made the repairs over a period of time in excess of a year, that Seller and his employees had full knowledge of the repairs and never objected or raised any question concerning same. It also seems quite clear that repairs to the property worked only to the benefit of Seller. We also note that Seller did not specify this provision of the contract as a ground for termination. The evidence preponderates against the chancellor's finding that a reason for the contract termination was improvements made to the property.

As to the failure to properly insure, we do not find from the record that there is proof that Buyers allowed any insurance on the property to lapse. Moreover, Seller did not assign this as an event of default which must be corrected within thirty days. The evidence preponderates against the finding of the chancellor in this regard.

Concerning the termination for late payment, Seller concedes that as to the delinquent installment requirement of the contract, Seller is required to either accelerate the balance due

under the contract, or to collect a late charge on the past due installment. Seller, by his letter of July 21, 1994, specifically called for the late charge and thus was not relying on the delinquent installment as a event of default. If we should consider Seller's August 11, 1994 letter as a notice of acceleration, we must also consider it deficient in that it did not inform Buyers of the amount due for payment of the balance of principal and interest and any other charges.

The contract before us is clear that Buyers are granted the right to prepay in whole or in part the balance of the indebtedness. It is also clear that in the event Buyers default in the payment of an installment, Seller has the option to accelerate and declare the entire balance due, which terminates the contract, or to continue the contract and collect a late charge for the installments.

Paragraph 7 of the contract provides that the failure of Buyers to keep the property insured or to pay the taxes due may be deemed events of default. This paragraph specifically provides additional rights and remedies for these particular events of default. Seller is authorized to terminate the contract if they notify Buyers of their intent to do so if the defaults set out in Paragraph 7 are not corrected within a period of thirty days after notice by Seller. The contract terms give Seller the "right to declare this contract terminated," if there has been no correction of the default by Buyers. In the instant case, Seller's July 21, 1994 letter gave notice to Buyers that unless taxes were paid along with the past-due installments, Seller was terminating the contract. Subsequently, by letter of August 11, 1994, Seller, through his lawyer, declared the contract terminated. The termination notice was issued before thirty days had expired from the July 21, 1994 letter, and specifies as a ground for termination the delinquent installment payment. The letters of July 21 and August 11 are somewhat confusing, and in view of the contract terms, Buyers could reasonably believe that they could pay off the balance of the indebtedness which they promptly tried to do. The record is clear that Buyers attempted to pay off the entire indebtedness after learning that Seller had declared the contract in default. In the absence of a specific time in the contract for paying off the accelerated balance, a reasonable time should be allowed by implication. *See Moore v. Moore*, 603 S.W.2d 736 (Tenn. App. 1980).

The proof indicates that the property has a value in excess of the balance due on the contract, and Buyers have invested considerable sums in the property. While forfeitures are not

illegal, they are not favored in the law and are to be strictly construed. *Simmons v. Hitt*, 546 S.W.2d 587 (Tenn. App. 1976).

Every contract contains an implied duty of good faith and fair dealing in performance and enforcement. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn. App. 1987). When Seller determined that the contract should be terminated for nonpayment of installment payments, Buyers had the right to pay off the balance of the indebtedness and obtain title to the property. This they were not allowed to do.

Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court. The trial court should require Seller to promptly furnish Buyers a pay-off statement with the balance due of both principal and interest. Since Buyers did not tender a pay-off amount into court at the time of institution of the suit, Seller should be entitled to all accrued interest to the date of payment. The trial court should allow Buyers a reasonable time to make the payment and upon payment require Seller to comply with the terms of the contract concerning the warranty deed. Costs of the appeal are assessed to the Seller.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HERSCHEL P. FRANKS, JUDGE**