TINDELL v. BOWERS et al. No. 4.—216 S. W. (2d) 752.

Eastern Division.   Sept. 17, 1948.

Petition for Certiorari denied by Supreme Court, Dec. 11, 1948.

George Child, of Knoxville, for complainant.

Wayne Parkey, of Knoxville, for defendants.

HOWARD, J. The parties will be referred to as they appeared in the Court below.

This suit grows out of a written contract and is before us on appeal from the Chancery Court of Knox County where complainant, Nora Tindell, obtained a decree against Martin C. Bowers, doing business as Bowers Bros., for $5,400 with six per cent interest thereon from April 6, 1947. The decree also impressed a lien upon the property involved and directed a sale on terms of one-half cash with balance due in six, twelve and eighteen months, and that the deficiency, if any there be, constitute a judgment against defendant.

On November 21, 1946, complainant owned a 20-acre tract of land in the Fifth Civil District of Knox County, which defendant, an auctioneer, contracted to sell for her. The parties went to considerable expense in preparation for the sale which was scheduled for January 6, 1947. The tract was divided into lots by defendant and he hired a contractor to improve the property at a cost of $416.25, which amount was paid by complainant. Complainant also paid defendant $300 to be applied on the expenses of the auction and the auction cost defendant about $500.

On the above date an attempt was made by the defendant to sell the lots separately, but being unsuccessful, the entire tract was offered for sale and the highest bid obtainable was only $4,100 which was unacceptable; and to protect the property for the complainant owner, John Wilkerson, defendant's agent, made a token bid of $6,000.

Complainant did not attend the auction but her son, Roy Tindell, was there as her agent, and he testified regarding the transaction as follows (Transcript, pages 25, 26, 27):

"Q Tell what Mr. Bowers did in conducting the sale and how it terminated. A Well, he finally got a $4100.00 bid on the whole tract, 84 lots, and Mr. Bowers called me over to one side and asked me if I wondered if my mother would be willing to take $4100.00 for it, and I told him I didn't believe she would, that she would be disappointed; that she would like to have at least $6,000.00 for it, and Mr. Bowers said, 'Well, I will give you $6,000.00 for it if you will pay me my commission of 10%, which would leave $5400.00,' and he said for me to take my mother—

"Q Did anybody bid it off to make the appearance of a sale there? A Quite a few bid at first.

"Q Did anyone bid the $6,000.00? A Not until the last.

"Q Who bid it at the last? A John Wilkerson. He heard me talking to Mr. Bowers about my mother wanting $6,000.00.

"Q Was Ralph Peterson there on the day of the sale? A Yes.

"Q Was Mr. Wilkerson there? A Yes.

"Q Were they with Mr. Bowers out there helping him conduct the sale? A Yes.

"Q And mixing with the crowds? A Yes.

"Q And after your conversation with Mr. Bowers I will ask you whether or—tell how that bid was made—the

$6,000.00? A John Wilkerson was the one that made the bid of $6,000.00 and closed the sale, and John asked me—he had a little note back there, and he told me to sign it to make it to appear like the sale had gone through. It was sold because it was an absolute auction and had to be sold. It was advertised as that, and I told him I would rather not sign it, and he said it didn't amount to anything, just a form, and I signed it, and that ended the sale.

"Q Then what happened, did Mr. Bowers talk to you any more, give you instrutions as to what to do? A Yes.

"Q Tell the court what it was. A He said for me to take my mother and go in to the office, and the boys would fix up the contract and papers, and anything they done would be all right with him, that they were his representatives.

"Q Who were the boys? A Ralph Peterson and John Wilkerson."

Upon complainant going to the office of defendant, the following contract was signed by complainant and by Ralph Peterson, agent for Bowers Bros.:

"Date: January 6, 1947

"Bowers Bros., Auctioneers

"822 South Gay St.

"Knoxville, Tennessee, P. O. Box 131

"For $1.00 cash in hand paid receipt of which is hereby acknowledged, I, or we, hereby employ, authorize, and instruct you to sell at Auction the following described real estate:

"I, Mrs. Nora Tindell, agree to have Bowers Bros. sell one tract of land, consisting of twenty acres, more or less being located on Roberts Road in the 5th Civil District of Knox County, Tennessee, for a net sum of Fifty-Four Hundred Dollars ($5,400.00).

478

"I, Mrs. Nora Tindell, do further agree to let Bowers Bros. arrange with Joe Meighan Construction Company to pay for the total amount of street grading, which was done on place being whatever it may; this amount is to be deducted from the $5,400.00.

"You may subdivide property in the manner and way you deem best, and sell same as whole or parcel by parcel as subdivided.

'The Terms and Conditions on which the sale of property shall be confirmed are as follows:

"Terms, one-half cash, balance six, twelve and eighteen months, at six percent interest.

"In any event that we, Bower Bros. should sell any part of these tracts or lots, then we shall abide by the above terms of one-half cash, 6, 12, and 18 months at 6% interest, with the cash applied to be deducted from the $5,400.00 net price.

"We, Bowers Bros, have the right to sell any way that may seem necessary or proper.

"In the case that Bowers Bros. do not dispose of the entire amount of this property in ninety (90) days, then Bowers Bros. shall redeem the property, making settlement for the entire amount for which may be unsettled, with terms of one-half cash, balance 6, 12 and 18 months from time settlement is made.

"The above described property adjoins Jess Campbell on the North and fronts on Roberts Road, exactly 700 feet, including 2 graded streets, and runs back to Floyd Buckner's line on the West.

"In the event the property should bring over the amount of $—, I, or we, agree to allow you the entire amount above $— for which property is sold.

"The above right and authority is yours exclusively and irrevocably for a period of 90 days from the above

date, and any time thereafter until I give Bowers Bros. 30 days notice in writing.

"(Signed)   Mrs. Nora Tindell

"I hereby accept the sale of the within described property on the terms and conditions set out herein.

"(Signed)   Bowers Brothers
"(by)                     Ralph Peterson

"This agreement accepted subject to approval of

"Martin C. Bowers"

The record discloses that the above contract was prepared by Peterson, defendant's agent, with pen and ink on one of defendant's printed auction forms, and that many conditions appear therein pertaining to auction sales which have no bearing on the issues involved herein. However, the following provisions of the contract clearly indicate that defendant purchased the property involved:

"We, Browers Bros. have the right to sell any way that may seem necessary or proper.

"In the case that Bowers Bros. do not dispose of the entire amount of this property in ninety (90) days, then Bowers Bros. shall redeem the property, making settlement for the entire amount for which may be unsettled, with terms of one-half cash, balance 6, 12, and 18 months from time settlement is made.

█ It is a well-settled rule of law that where part of a contract is written and parts is printed, and the written and printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing will control.   12 Am. Jur., Sec. 253, page 797.

It is insisted on behalf of defendant that the contract was never approved or ratified by him.   The undisputed proof is that defendant sent Roy Tindell and William E. Brown to complainant with the offer which he made, and

instructed them to take her to his office where the contract was prepared and signed.

Both Tindell and Brown testified that Peterson, who signed the contract as agent for defendant, was present and heard what defendant said about purchasing the property and that Peterson was one of the "boys" defendant referred to when he told Tindell to take his mother to the office "and the boys would fix up the contract and papers, and anything they done would be all right with him, they were his representatives."

■ Defendant, in his testimony, does not positively deny knowledge of the contract but says that his employees may have showed it to him. His employees, Peterson and Wilkerson, were not called to testify, and no explanation for their absence was offered at the trial. Both were present at the sale, and Peterson prepared and signed the contract as agent of the defendant. Since they were defendant's employees and their testimony was available in his behalf, we may assume under the circumstances that if they had been called, their testimony would have been unfavorable for defendant. Stevens v. Moore, 24 Tenn. App. 61, 139 S. W. (2d) 710; Baker v. Baker, 24 Tenn. App. 220, 142 S. W. (2d) 737; Bennett v. Duffle, Tenn. App., 198 S. W. (2d) 287.

■ Complainant's attorney on July 10 and August 15, 1947 wrote defendant two letters regarding the contract and upon receipt of the letters, defendant made no attempt to disapprove the contract. Suit was not filed until October 7, 1947, and for a period of several months from the time the letters were written until suit was filed defendant remained silent and made no effort to disaffirm the agreement. Under the above circumstances we think that the Chancellor correctly held that defendant had affirmed and ratified the contract.

Defendant also relies upon the following printed provision at the bottom of the contract: "This agreement accepted subject to approval of Martin C. Bowers." Though the contract contains this provision it does not say it shall be "approved in writing." This provision was apparently put in the contract as a precaution, since the defendant testified that there were many salesmen working for him.

This case heard on oral testimony by the Special Chancellor who saw and heard the witnesses and observed their manner and demeanor while testifying. He was in a much better position to determine the value of the weight to be given their evidence than is this Court; and under Code Section 10622, this Court will not disturb the judgment of the Trial Court unless it appears that the evidence preponderates against the judgment of the lower Court. Finding no error in the decree of the Chancellor, it will be affirmed at defendant's costs and the cause will be remanded for enforcement of the decree as indicated.

McAmis and Goodman, JJ., concur.