**Joe WEST, Plaintiff-Appellee,**

v.

**LAMINITE PLASTICS MANUFACTURING CO., Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 10, 1984.

Application for Permission to Appeal Denied July 16, 1984.

Robert G. Millar, Memphis, for plaintiff-appellee.

J. Thomas Caldwell, Ripley, for defendant-appellant.

CRAWFORD, Judge.

Laminite Plastics Mfg. Corp. (hereinafter Laminite) appeals from an adverse judgment of the trial court in a non-jury case awarding $18,419.78 plus prejudgment in-terest to Joe West (hereinafter West). West was a sales representative with Laminite and the judgment represented commissions allegedly due West under a written employment contract with Laminite.

The sole issue raised on appeal as framed by appellant is:

Whether the trial judge erred in holding that the parties' written contract did not except any "house account" other than that listed specifically in the contract and in rendering judgment for the plaintiff for $18,419.78 plus interest.

The portions of the contract that are the basis of the suit are set out below:

We hereby appoint you as our sole and exclusive Sales Representative for Laminite Plastics Mfg. Corp. for our products listed in the attached Addendum A, within the territory described and attach Addendum B, effective upon your acceptance of this Agreement, upon the following terms and conditions:

1.  You will act as an individual contractor and devote your best efforts to the promotion and sale of our products in your territory to all potential customers excepting only those accounts serviced by Laminite as "house accounts," and further excepting governments and governmental agencies. As requested, you will also assist us in obtaining credit information and in the collection of overdue accounts.

    \*     \*     \*     \*     \*     \*

3.  We shall pay you a commission equal to that percentage listed in Addendum C hereto, of all sales of our products to your accounts, including new accounts solicited by you and accepted by Laminite.

    \*     \*     \*     \*     \*     \*

ADDENDUM "B"

Your territory shall consist of the following states, possessions, territories or foreign countrys [sic]: Mississippi, Arkansas, West Tennessee

House Account—New Orleans Furniture.

ADDENDUM "C"

Three percent on all accounts unless otherwise negotiated. All exceptions to this rule will be covered by appropriate documentation.

Basically West contends that the only "house account" excluded from his territory was the New Orleans Furniture account, and therefore he should be paid commissions on sales made to all other companies within his territory. He states that he was not paid commissions on the account known as PFI, Inc., and PFI is located in Arkansas which is part of his territory. On the other hand, Laminite states that the PFI account along with the New Orleans Furniture account were "house accounts" and consequently West is not entitled to commissions on "house account" sales.

West, Tom Scates, Vice-President of Laminite, and Arnold Friedlander testified, and for the most part the facts are undisputed.

According to West's testimony he began working for Laminite some time in the early or middle 1960's pursuant to an oral employment contract as a sales representative. Some time in the middle or latter part of 1978, West was terminated. A conflict arose when West refused to sign a written employment contract. At some point in time after this termination negotiations concerning a written employment contract were renewed. On March 24, 1979, he signed the written employment contract with Laminite that became the subject of this lawsuit.

West also stated that he was never told by Laminite of the existence of PFI during the negotiations or afterwards; that "house accounts" and regular accounts directly competed against one another for sales to the public and factory time. Consequently, had he known of the PFI account designation as a "house account," he would not have signed his employment contract, because few accounts existed in the whole territory and a large account such as PFI designated as a "house account" would greatly diminish his commissions. West also stated that a "house account" was an account that was totally serviced by the

company by salaried employees. He stated that he had never serviced PFI and admitted that salaried employees serviced this account. He also stated that "house accounts" are "made known on the front end of a contract that they [company] are going to handle this particular account and that no commission will be paid on it ...."

Tom Scates testified that he was Vice-President of Laminite. The contract in question was a three page contract. The first two pages represented a standard form used nationwide for all the sales representatives. The third page, or the addendum, is created for a specific territory and a specific representative. He stated, "I think the addendum at the time a contract is drawn up is to cover points between a company and the sales rep." He further stated that Laminite knew of the existence of PFI when negotiations were entered into between West and Laminite, and he admitted that the existence of PFI was not made known to West. He also stated, "I don't know why the sales department did not discuss it [PFI] with Joe West." He testified that he was not employed in the sales department, and therefore he was not a party to the negotiations of the contract. He stated that a "house account" was serviced by the salaried personnel of the corporation and that PFI was serviced as a "house account." He also stated that the various accounts competed against one another for sales in a given market.

Arnold Friedlander testified that he had been a sales representative for many companies and a national sales manager for three different companies. The trial court allowed him to testify concerning the definition of "house accounts." He stated, "If there is a house account, it is clearly understood up front that that is a house account, and the representative is not to solicit business from it ..." He also testified that "house accounts" compete with other accounts which are not "house accounts."

Laminite asserts that the written employment contract between West and Laminite is clear and unambiguous. Clause 1. provides that "house accounts" are distin-

guished from the sales representatives' accounts, that Laminite services the "house accounts" and that the sales representatives are not paid commissions on those "house accounts." Laminite states that the addendum to the contract designated only New Orleans Furniture as a "house account" does not exclude other accounts from being "house accounts" and in support of this position relied upon *Beeler v. Pennsylvania Threshermen & Farmers Ins. Co.,* 48 Tenn.App. 370, 346 S.W.2d 457 (1960). In *Beeler, supra,* an insurance policy provided coverage for injury sustained "while occupying or being struck by an automobile." An exclusionary clause provided that injuries sustained while occupying or being struck by a farm-type tractor or other piece of equipment were not covered. The insured was injured while operating a motorcycle, and insisted that under the doctrine *"expressio unius est exclusio alterius,"* the insurer, by naming certain vehicles in the exclusion clause, impliedly limited the exclusion to the vehicles so named; and, therefore, a motorcycle is not excluded under the term "automobile." The court pointed out, however, that the maxim was not applicable, because the exclusion referred to was more in the nature of a limitation upon the activities covered and the place where the offending vehicle must be operated, and did not attempt to limit the meaning of the term "automobile."

The *Beeler* case is unlike the case at bar, because the express terms of a type-written addendum of the contract undertakes to limit the meaning of a general term "house account" in the form contract to "house account:—New Orleans Furniture." In the instant case we are not speaking of two distinct entities such as "automobile" and "motorcycle" in *Beeler, supra,* but to the contrary we are dealing with the intentions of the parties regarding the meaning of "house account" as used in the contract as a whole.

▪ The cardinal rule in construing contracts is to ascertain the intent of the parties. *Walker v. Tennessee Farmers Mutu-*

*al Insurance Company,* 568 S.W.2d 103 (Tenn.App.1977).

As gleaned from all of the proof, the first two pages of the contract constitute a form contract utilized on a national basis, and the third page, or addendum page specifically establishes the terms and conditions between the company and the particular sales representative. Laminite knew of the existence of the PFI account at the time it entered into the contract, and Laminite did not designate the account as a "house account."

▪ It is a well-settled rule of law that when part of a contract is written and part is printed, and the written and printed parts are apparently inconsistent or reasonable doubt pertaining to the sense and meaning of the contract as a whole is present, the words in writing will control. *Tindell v. Bowers,* 31 Tenn.App. 474, 479, 216 S.W.2d 752, 754 (1948).

As noted in 17 Am.Jur.2d Contracts § 271:

> The reason greater effect is given to the written or typed part of an agreement than to the printed part of it, if they are inconsistent, is that *the written or typed words are the immediate language and terms selected by the parties themselves for the expression of their meaning,* while the printed form is intended for general use without reference to particular objects and aims. (Emphasis supplied)

*Id.* at 679.

It goes without saying that the rule announced in *Tindell, supra,* applies to "form" contracts in general and not merely to such contracts that are in fact "printed."

This rule of construction as all other rules of construction, is utilized to aid the courts in perceiving the intention of the parties from the four corners of the contract. What did the parties intend when this agreement was executed? West intended to be paid for all accounts in his territory except those excluded by the contract as "house accounts." The only account known to West as a "house account"

to be excluded was New Orleans Furniture. With full knowledge that PFI was located within West's territory, Laminite specifically designated only New Orleans Furniture as a "house account." This designation is a persuasive demonstration of Laminite's intent to limit the "house account" exclusion to New Orleans Furniture only.

As noted, the contract in the case before us utilized a form contract to be used generally as an agreement with sales representatives all over the country, and the specific addendum added thereto was solely for the particular sales representative. The specific agreement between Laminite and West excluded only one house account as is clearly indicated in the addendum. We find no error in the judgment of the trial court and therefore affirm the judgment and remand this case for such other proceedings as necessary. Costs are adjudged against the appellant.

TOMLIN and HIGHERS, JJ., concur.