IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 5, 2002 Session

## RONNIE E. ERWIN v. MOON PRODUCTS, INC.

**Direct Appeal from the Chancery Court for Marshall County**
**No. 11240     Honorable J. B. Cox, Chancellor**

————————————

**No. M2002-00877-COA-R9-CV - Filed August 5, 2003**

————————————

This is an appeal from a denial of an application to compel arbitration.  For the following reasons, we affirm the court below.

**Tenn. R. App. P. 9; Judgment of the Chancery Court Affirmed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Jay S. Bowen, Timothy L. Warnock, Amy C. Martin, Nashville, TN, for Appellant

William T. Ramsey, Michael G. Mason, Nashville, TN, for Appellee

### OPINION

### Facts and Procedural History

On April 30, 1998, Ronnie E. Erwin ("Mr. Erwin")  entered into a "Members Agreement (Members Agreement or Membership Agreement)" with Moon Investors, LLC. While the Members Agreement covered a host of issues, we will mention only those pertinent to this appeal.  Mr. Erwin was designated as the sole "Employee Member." Paragraph 5 of the agreement is titled "Termination of Employment" and defines "cause," "termination for cause," and "involuntary termination." These definitions are applied in the sections following the definitions outlining the procedure that would be used for the LLC to purchase Mr. Erwin's interest in the event that Mr. Erwin's employment was terminated.  The Members Agreement also contained an arbitration provision that mandated the arbitration of "any controversy or claim arising out of or relating to this Agreement."

Thereafter, on May 1, 1998, the parties entered into an "Employment Agreement" (Employment Agreement) which provided that Mr. Erwin was to serve as President and CEO of Moon Products for five years.  The Employment Agreement provided for the salary and benefits of

Mr. Erwin. In paragraph 5 of the agreement, entitled "Termination and Continuation of Salary," the Employment Agreement provided that "[i]n the event Company shall terminate Employee's employment during the term of this Agreement, Employee shall be entitled to a continuation of the monthly salary payments . . . until the expiration of the term of the Agreement." The Employment Agreement did not contain an arbitration clause.

On May 5, 1999, Moon Products notified Mr. Erwin that his "contract was being terminated for cause." After being advised that he would receive no further compensation because he was terminated for cause, Mr. Erwin filed suit in the Chancery Court on October 25, 1999 based on the Employment Agreement. On October 16, 2001, Moon Products served Mr. Erwin with a Demand for Arbitration based on the Members Agreement, asking Mr. Erwin to stay the trial of the case pending arbitration. Mr. Erwin refused this demand and after a hearing on the matter, the trial court ruled that the arbitration clause in the Members Agreement did not apply to the Employment Agreement. Moon Products then filed for permission to appeal under Rule 9 of the Tennessee Rules of Appellate Procedure and that permission was granted.[1] Moon Products presents the following two issues for our review:

> I.      Whether the lower court erred in denying Moon Products' Motion to Stay this Case and to Compel Arbitration?
> II.     Whether the parties agreed, at the time they entered into the "Employment Agreement," that a dispute involving "cause" for termination of employment would be subject to arbitration?

## Standard of Review

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* TENN. R. APP. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" *Bank/First Citizens*, 82 S.W.3d at 727 (quoting *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). With respect to issues relating to the interpretation of a contract, "[t]he interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law." *Inscoe v. Kemper*, No. M1999-00741-COA-R3-CV, 2000 WL 1657844, at *2 (Tenn. Ct. App. Nov. 6, 2000) (citing *Union Planter's Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993)).

## Law and Analysis

This case is presented to us as an interlocutory appeal under Rule 9 of the Tennessee Rules of Civil Procedure. In the Agreed Order granting this Rule 9 appeal, the court below stated that "the Court's legal basis for granting Defendant's motion to seek an interlocutory appeal is set forth in Tenn. Code Ann. § 29-5-319(a)(1). This section states in pertinent part:

---

[1]  Note: As discussed in the Law and Analysis section, we do not think this is the proper procedure for the appeal of a denial of a motion to compel arbitration.

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 29-5-303;

. . . .

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

We have previously stated that:

> Generally, an appeal to this Court is permissible only from a final judgment adjudicating all the claims, rights and liabilities of all parties. TENN. R.APP. P. 3(a). The Uniform Arbitration Act ("UAA") as adopted in Tennessee and codified at sections 29-5-301 to -320 of the Tennessee Code, however, creates limited exceptions to this rule.

*T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 864-65 (Tenn. Ct. App. 2002)

Because there is a statutory basis for an appeal taken from an order denying an application to compel arbitration, we think the discretion of this Court and of the court below in granting a Rule 9 appeal is removed by the statute and that the proper avenue for appeal is an appeal as of right under Rule 3 of the Tennessee Rules of Appellate Procedure. *See Promus Hotels, Inc. v. Martin, Cole, Dando & Robertson, Inc.*, No. W2002-01028-COA-R3-CV, 2003 Tenn. App. LEXIS 95, at *4 (Tenn. Ct. App. February 3, 2003) ("under T.C.A. § 29-5-319(a)(1), an appeal of right may be taken from an order denying an application to compel arbitration made pursuant to T.C.A. § 29-5-303"). This appeal was certified and accepted under Rule 9, and we will decide it as such, but we think the correct procedure would be to bring such an appeal in the same manner as any other appeal as of right under Tennessee Rule of Appellate Procedure 3.

Moon Products contends that the trial court's finding that "the employment contract of the Plaintiff does not include an arbitration clause and that the 'membership agreement' arbitration clause was not included in the employment agreement when the parties had opportunity to include the language of the membership agreement into the employment agreement" is in error. Although Moon Products presents two issues for our review, we think that the two issues presented involve the same analysis and we will therefore decide them together.

Moon Products contends that the central issue in the current dispute as evidenced by Mr. Erwin's complaint is whether or not Mr. Erwin was terminated "for cause." Moon Products argues that the definition of "cause" agreed to by the parties is contained in the Membership Agreement. Moon Products argues that we should construe the Membership Agreement and the Employment Agreement together as part of one transaction defining Mr. Erwin's employment relationship with Moon Products, and thus read the two agreements together. Moon Products supports its argument with *Hinson v. Midland Bank and Trust Co.*, No. 85-187-II, 1986 Tenn. App. LEXIS 3190, at *11 (Tenn. Ct. App. July 30, 1986) which stated that "[i]f a single transaction is embodied in more than one written instrument, all instruments should be read together and construed with reference to each

other." Moon Products argues that the parties agreed on the definition of "cause" in the Membership Agreement and therefore did not put a duplicate definition in the Employment Agreement signed the next day. Moon Products cites *T.R. Mills Contractors v. WRH Enterprises, LLC*, 93 S.W.3d 861 (Tenn. Ct. App. 2002) which states "[w]hen there is a clear relationship between a written agreement containing an arbitration clause and a written supplemental agreement that does not contain such a clause, disputes arising under the supplemental agreement will be subject to arbitration under the original agreement." Moon Products further notes that there is no integration clause in the Employment Agreement.

Mr. Erwin asserts that the Membership Agreement and the Employment Agreement are two separate agreements and should not be read together. Mr. Erwin argues that the Employment Agreement could have contained an arbitration clause or incorporated the arbitration clause contained in the Membership Agreement. Mr. Erwin notes that one portion of the Membership Agreement, a non-compete provision, was expressly incorporated into the Employment Agreement. Mr. Erwin argues this would not have been necessary had the parties intended the two agreements to be part of one transaction rather than two separate agreements. Mr. Erwin points us to *Rainey v. Stansell*, 836 S.W.2d 186, 191 (Tenn. Ct. App. 1992) which states that this Court "does not attempt to ascertain the parties' state of mind at the time of the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." Mr. Erwin further argues that by its own terms the Membership Agreement does not apply to the Employment Agreement. Mr. Erwin points to the integration clause in the Membership Agreement, and to the actual wording of the arbitration clause in the Membership Agreement which stated that it applied to "any controversy or claim arising out of or relating to *this* Agreement." (emphasis added). Mr. Erwin asserts that since the Employment Agreement did not exist at the time the parties entered into the Members Agreement, the only agreement that the integration clause and arbitration clause could be applied to was the Members Agreement.

We have stated that:

> In deciding whether parties agreed to arbitrate a particular issue, courts should apply ordinary state law principles. [*Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d] at 85. The court should ascertain the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms." Id. (quoting *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990)).

*T.R. Mills Contractors v. WRH Enterprises, LLC*, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002)

We have recently made the following statement of the "ordinary state law principles" regarding contract interpretation:

> The interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. *NSA DBA Benefit Plan, v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App.1997). The cardinal

-4-

rule in the construction of contracts is to ascertain the intent of the parties. *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. Ct. App.1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (Tenn. 1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler--Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn. Ct. App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. Ct. App.1981). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (Tenn. 1950).

*Promus Hotels, Inc. v. Martin, Cole, Dando & Robertson, Inc.*, No. W2002-01028-COA-R3-CV, 2003 Tenn. App. LEXIS 95, at *6-7 (Tenn. Ct. App. February 3, 2003).

With these principles in mind, we will examine the Membership Agreement first, followed by the Employment Agreement. The Members Agreement was entered into on April 30, 1998. It's stated purpose is to "assure the closely-held nature of the LLC; to assure effective management of the Company in which the LLC is being formed to invest; and to enter into an agreement on certain other matters." The pertinent portions of the disputed Section 5 of the Members Agreement read as follows:

5. Termination of Employment

    (a)    Definitions. For the purposes of this Section 5, the following definitions apply:

    (i)    "Cause" shall mean (A) when an Employee Member engages in conduct which involves personal dishonesty, willful misconduct or a breach of a fiduciary duty involving personal profit, or which constitutes a criminal offense (other than traffic violations or similar offenses), the willful violation of any other law or statute or habitually abuses alcohol or drugs and the Board of Directors of the Company makes a good faith determination that such conduct has occurred and that such conduct materially impairs such person's ability to carry out its duties to the Company; or (B) when the Board of Directors of the Company makes a good faith determination, after providing notice to the employee in question and providing the employee in question an opportunity to meet with the Board of Directors of the Company concerning such conduct and to cure such conduct, that the person in question has breached any material provision of this Agreement, or has failed to perform in any material respect the duties assigned to him by the Company consistent with the job responsibilities that such person has as of the date of this Agreement or a willful breach of the policies described in Section 9(b) hereof.

. . . .

      (iv)    "Termination for Cause" shall mean if a person's employment relationship with the Company is terminated by the Company for Cause.

(b)    <u>Option to Purchase</u>  In the event the employment of an Employee Member with the Company terminates (such Employee Member being hereinafter called the "Terminating Member," which defined term includes, where applicable, the personal representative of the Employee Member, in the event of his death, and permitted Transferees), the LLC shall have the option to purchase, all of the Terminating Member's Interests. Such option shall be exercisable in the manner and upon the terms specified in Section 6.

(c)    <u>Purchase Price</u>. The Purchase Price for LLC Interests purchased by the LLC pursuant to Section 5 shall be determined under Section 6 using a value for such LLC Interest equal to: (I) in the case of a termination for Cause, an amount equal to the Terminated Member's Capital Account; and (ii) in all other cases, the Fair Market Value (as hereinafter defined).

Section 11 of the Members Agreement contains the following two subsections relevant to the current dispute:

(f)    <u>Complete Agreement</u>. This Agreement, the appendices and exhibits annexed hereto and agreements, instruments, documents, schedules and certificates referred to herein contain the entire agreement among the parties with respect to the transactions contemplated herein, when taken together with the LLC Agreement and the Investment Agreement.

. . . .

(j)    <u>Arbitration</u>. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Chicago, Illinois, in accordance with the rules then in effect of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

The Employment Agreement was entered into by the parties on May 1, 1998. This Agreement terminated the agreement that Mr. Erwin was working under with Moon Products and set a term of employment from May 1, 1998 to April 30, 1998. It contains no arbitration or any other dispute resolution clause. It has its own section concerning termination of employment, and as stated above specifically incorporates the non-compete portion of the Members Agreement, but makes no other mention of any other part of that agreement.

-6-

We find that the Members Agreement quoted above is a separate agreement from the Employment Agreement. The Members Agreement contains an integration clause that specifically mentions other documents including the LLC Agreement and the Investment Agreement, but does not mention the Employment Agreement. We must give this clause its stated effect. Section 5 of the Members Agreement is used by Moon Products to reach the arbitration clause in Section 11 by arguing that the definition of cause contained in Section 5 was the basis for the termination of Mr. Erwin's employment. We cannot agree. Section 5 presents definitions "for purposes of *this* Section." (emphasis added). The purpose of Section 5 is not to define the terms of Mr. Erwin's employment or the termination thereof. The plain purpose of Section 5 is to define the rights and responsibilities of the members should Mr. Erwin be no longer employed by Moon Products in regards to the purchase of Mr. Erwin's interest in the LLC by the remaining members. The definition of "cause" contained in Section 5 is specifically applied in Section 5 to determine the price that the remaining members would pay to buy out Mr. Erwin's interest in the company - in the case of a termination for cause, an amount equal to Mr. Erwin's Capital Account and in other cases, the fair market value of Mr. Erwin's interest.

As for the Employment Contract, it does not expressly or impliedly incorporate the whole of the Membership Agreement. The only mention of the Members Agreement to be found in the Employment Agreement is found in Section 6 of that Agreement which states:

Non-Competitive Clause. The provisions of Section 8 of the Members Agreement among Moon Investors, LLC, Employee, Company and others are incorporated herein by reference as if fully set forth herein.

As stated above, it is not for this Court to make a contract for the parties, but we are to enforce the contract as it is written. Furthermore, " we of course do not determine what the state of mind was of the parties at the time the contract was executed but rather what their intention was as actually embodied and expressed in the instrument as written." *Petty v. Sloan*, 277 S.W.2d 355, 360 (Tenn. 1955). We conclude that the Members Agreement and the Employment Agreement are not part of the same transaction. The record shows that the two agreements were signed on separate occasions. They deal with different subject matter. The Members Agreement contains an integration clause that makes specific reference to other documents but does not include the Employment Agreement. The Employment Agreement expressly incorporates the non-compete provision of the Members Agreement, but no other portions of that agreement. We have found that Section 5 of the Members Agreement limits its definitions to "this Section." Thus, we find that the two agreements are separate and distinct agreements and therefore, the arbitration clause found in the Members Agreement does not apply to the Employment Agreement.

**Conclusion**

For the foregoing reasons, we affirm the court below in its denial of Moon Products' motion to compel arbitration and remand this case for further proceedings consistent with this opinion. Costs of this appeal are taxed to Moon Products and its surety for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE