# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 2, 2004 Session

## DANNY R. BLALOCK, v. CAROLYN S. BLALOCK

**Appeal from the Circuit Court for Sevier County**
**No. 2001-458-III      Rex Henry Ogle, Judge**

**FILED FEBRUARY 24, 2004**

**No. E2003-01151-COA-R3-CV**

---

A mediated agreement provided that Husband would sell his one-half interest in Pigeon Forge property to Wife for $500,000.00, but if the purchase price was not paid in one year, the property would be sold at auction and the net proceeds divided. The property was sold at auction for $244,429.00, net. Wife claims this amount plus $255,271.00 and the trial court agreed.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court is Affirmed as Modified**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, J.J., joined.

Robert L. Jolley, Jr., Knoxville, Tennessee, attorney for Appellant, Danny R. Blalock.

Jerrold L. Becker and Jennifer R. Pearson, Knoxville, Tennessee, attorneys for Appellee, Carolyn S. Blalock.

## OPINION

This is a domestic relations case in which a Rule 31 Mediator was appointed who reported that the mediation was successful "in that an agreement was reached concerning all issues" on December 17, 2001. A formal Settlement Agreement was executed by the parties and their counsel, which provided (1) that the Husband would receive a duplex in Nevada upon payment to wife of $8,000.00 for her equity in the property, (2) that Husband agrees to purchase, and Wife agrees to sell, her interest in real property in Pigeon Forge, Tennessee, for $500,000.00 "payable in full within one year from the date of entry of the final decree to be secured by a deed of trust executed by Husband in favor of Wife", (3) that during the "intervening year" Husband shall continue to develop the property at his expense, (4) that during the year Wife will receive one-half of the net proceeds of any sale of any portion of the property to be credited against the "sell price" of $500,000.00, (5) in the

event the $500,000.00 is not paid in full in one year, the property shall immediately be placed at absolute public auction and the parties will equally divide the net proceeds, (6) automobiles were allocated, (7) a joint account containing $40,000.00 shall only be used to pay the "winter time indebtedness" on the Pigeon Forge property.

The agreement provided that "[t]he parties by their signatures represent that this is the entire agreement by and between them; that they are satisfied with the agreement and wish the Court to approve the agreement; that they have relied upon the advice of their own independent counsel; that the Mediator has not provided any legal advice to them."

On May 3, 2002, the parties listed the Pigeon Forge property for sale with a Realtor. The asking price was $1,190,000.00. If the property remained unsold on June 15, 2002, they agreed to auction it. This agreement was approved by the trial court by order which expressly reserved the issue of the distribution of the proceeds of the sale.

A final judgment was entered April 15, 2003[1], granting a divorce on stipulated grounds. The judgment incorporated a MDA agreement executed by Husband only, which contained a provision respecting the Pigeon Forge property similar to the mediated agreement.

The property was sold at auction for $764,500.00, substantially less than its value as estimated by the parties, and the net proceeds of $244,429.00 were awarded to Wife together with a judgment of $255,571.00 against Husband, on the theory that he had agreed to purchase Wife's interest for $500,000.00.

Husband appeals, insisting that his initial agreement to purchase the Wife's fifty percent interest in the property for $500,000.00 was mutually repudiated and suspended by an agreement to sell the property and divide the net proceeds equally. This is the issue for resolution. Appellate review is *de novo* on the record with a presumption that as to factual matters the judgment is correct. Rule 13(d) Tenn. R. App. P. Conclusions of law bear no presumption of correctness. **Coldwell Banker v. KRA Holdings**, 42 S.W.3d 868 (Tenn. Ct. App. 2000).

When there has been a mediated settlement agreement this Court has applied the terms of contract law to determine whether a judgment may be entered based upon the agreement. **Environmental Abatement, Inc. v. Astrum R. E. Corp.**,27 S.W.3d 530, 539-540 (Tenn. Ct. App. 2000); **Vaccarella v. Vaccarella**,49 S.W.3d 307, 314-315 (Tenn. Ct. App. 2001). The trial judge in interpreting paragraph 2 held that Wife was entitled to $500,000.00. We respectfully disagree.

In *Pitt v. Tyree Org., Ltd.*,90 S.W.3d 244, 252 (Tenn. Ct. App. 2002), this Court summarized the general rules for construction of contracts:

---

[1] This judgment is captioned as an amended final judgment, because a prior "final" judgment was filed August 15, 2002. However, this judgment was not signed by the trial judge and thus has no legal efficacy.

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. ***Bradson Mercantile, Inc. v. Crabtree***, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999)(citing ***West v. Laminite Plastics Mfg. Co.***, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id.* (citing ***Petty v. Sloan***, 197 Tenn. 630, 277 S.W.2d 355 (1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Id.* (citing ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d. 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intention should be given the usual, natural, and ordinary meaning. *Id.* (citing ***Ballard v. North American Life & Cas. Co.***,667 S.W.2d 79 (Tenn. Ct. App. 1983)). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Id.*, (citing ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *Id.* (citing ***McKee v. Continental Ins. Co.***, 191 Tenn. 413,234 S.W.2d 830 (1950)).

The entire contract must be considered in determining the meaning of any or all of its parts. ***Aetna Cas. & Sur. Co. v. Woods***,565 S.W.2d 861, 864 (Tenn. 1978). "No single clause in a contract is to be viewed in isolation; rather the contract is to be 'viewed from beginning to end and its terms must pass in review, for one clause may modify, limit or illuminate another.' ***Cocke Co. Bd. of Highway Comm'rs v. Newport Utils. Bd.***,690 S.W.2d 231, 237 (Tenn. 1985)." ***Fizzell Constr. Co. Inc. v. Gatlinburg. L.L.C.***,9 S.W.3d 79, 85 (Tenn. 1999).

The interpretation of an unambiguous written agreement is a question of law for the court, ***Hamblen County v. City of Morristown***,656 S.W.2d 331, 335-36 (Tenn. 1983), and the court's overriding purpose is to ascertain the intention of the parties. ***Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***,521 S.W.2d 578, 580 (Tenn. 1975). The court should consider the entire contract, ***Cocke Co. Bd. of Highway Commissioners v. Newport Utilities Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985), and the "situation involving the parties, the nature of the business in which they are engaged and the subject matter to which the contract relates." ***Stovall v. Dattel***, 619 S.W.2d 125, 127 (Tenn. Ct. App. 1981). ***Williamson County Broadcasting Co., Inc. v. Intermedia Partners***, 987 S.W.2d 550, 552 (Tenn. Ct. App. 1998).

Paragraph 2 of the "settlement agreement" provides:

> The Husband agrees to purchase and Wife agrees to sell all her right, title and interest in and to the property situated in Pigeon Forge,

Tennessee for the sum of $500,000.00 to be payable in full within one year from the date of entry of the Final Decree, to be secured by a deed of trust executed by Husband in favor of Wife. During the intervening year, Husband shall continue to develop the property and shall be responsible for all development costs and all indebtedness associated with the property. During the year, Wife will receive one-half (½) of the net proceeds of any sale of any portion of the property to be credited against the sell price of $500,000.00. In the event the $500,00.00 is not paid in full in one year, the property shall immediately be placed at absolute public auction and the parties will equally divide the proceeds after all expenses and indebtedness.

The last sentence significantly provides "[i]n the event the $500,000.00 is not paid in full in one year, the property shall immediately be placed at absolute public auction and the parties will equally divide the proceeds after all expenses and indebtedness." The net proceeds from the absolute public auction were $244,429.00.

Wife argues that Husband agreed to purchase her interest for $500,000.00, and that the trial judge correctly recognized this obligation by Husband. This argument overlooks the fact that the buy-and-sell provision of the contract was never activated. Husband did not purchase the property; Wife never tendered any instrument of conveyance; no deed of trust was executed. The parties mutually agreed upon a *different disposition* of the property, *i.e.*, a sale at auction to the highest and best bidder. The judgment that the Husband owes the Wife $255,571.00 for her interest in the Pigeon Forge property is vacated. The net proceeds of $244,429.00 resulting from the sale of the property will be divided equally between the parties. As modified, the judgment is affirmed. Costs are assessed to the appellee.

_____
WILLIAM H. INMAN, SENIOR JUDGE