IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 26, 2024 Session

## LEXINGTON CHARTER, LP, ET AL. v. FBT OF TENNESSEE INC.

Appeal from the Chancery Court for Shelby County
No. CH-17-0775    JoeDae L. Jenkins, Chancellor

_____

### No. W2023-01311-COA-R3-CV
_____

This appeal arises from a dispute between a partnership and its limited partners concerning the payment of attorney's fees under the parties' limited liability agreement. The trial court held that the attorney's fees were payable from the proceeds of the sale of the partnership's property, and the limited partners appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Henry Clay Shelton, III, and Annabelle P. Harris, Memphis, Tennessee, for the appellants, RB Affordable Housing, and Regions Bank.

Robert L. Spence, Jr., and Kristina A. Woo, Memphis, Tennessee, for the appellee, Lexington Charter, LP.

## OPINION

### I. Background

This is the second appeal in this case. The rather protracted background facts are set out in ***Lexington Charter v. FBT of Tennessee***, No. W2021-01138-COA-R3-CV, 2022 WL 17820377 (Tenn. Ct. App. Dec. 20, 2022) ("***Lexington Charter I***"), which the Tennessee Supreme Court recently vacated in ***Lexington Charter v. FBT of Tennessee***, No. W2021-01138-SC-R11-CV, 2023 WL 3578587, ---- SW3d --- (Tenn. May 15, 2024) ("***Lexington SCt***"). The relevant facts giving rise to the instant appeal are more pointed.

In sum, this appeal arises from litigation between limited partners, Regions Bank and RB Affordable Housing, Inc. (together, "Appellants," or "Regions"), and Appellee Lexington Charter, LP ("Lexington Charter," or the "Partnership") over payment of attorney's fees incurred by Lexington Charter in defending Regions' claims through the appeals in *Lexington Charter I* and *Lexington SCt*.

In 2017, Lexington Charter and FBT of Tennessee (succeeded by Federal National Mortgage Association a/k/a Fannie Mae) hired the Spence Partners Law Firm ("Spence") to contest a foreclosure action against two low-income properties owned by the Partnership. Spence was able to stop the foreclosure, and the properties were subsequently sold (some three years later and after protracted litigation) for $950,000 and $3,200,000 respectively. The proceeds of the sale (minus debts, costs, and fees) were deposited with the Clerk & Master.

On the eve of the entry of an order dismissing the underlying case and allowing the distribution of the proceeds from the sale of the properties, Regions sought to intervene. The trial court denied intervention. Regions did not appeal the order denying intervention; rather, it filed a motion to alter or amend, which the trial court denied (giving rise to *Lexington I*). In *Lexington I*, this Court reversed that trial court's decision to deny Regions' request to intervene; however, in *Lexington SCt*, the Tennessee Supreme Court vacated our ruling and remanded the case to the trial court.

On remand from *Lexington SCt*, Lexington Charter sought disbursement of sales proceeds from the trial court to pay additional attorney's fees it incurred in defending Regions' litigation through the appellate process. The trial court granted Regions' motion to intervene for the limited purpose of objecting to Lexington Charter's motion. Regions countered Lexington Charter's motion on the ground that the Limited Partnership Agreement ("LPA") did not grant the Partnership the right or authority to hire counsel to defend itself against Regions' claims (unless Regions first approved the expenses). Regions further argued that the LPA precluded the Partnership from incurring any liability on behalf of the partners in excess of $10,000.

Following a hearing on August 18, 2023, the trial court entered its final order on August 24, 2023. The trial court granted the Partnership's request for relief on its findings that: (1) the Partnership hired counsel to defend the Partnership in a legal proceeding brought by Regions; (2) the litigation instituted by Regions was a legal action against the Partnership; (3) the attorney's fees in question were expenses from the sale of the properties; (4) the attorney's fees in question were a debt and liability of the Partnership; and (5) the attorney's fees in question were a liability incurred on behalf of the Partnership, not the Partners. As such, the trial court ordered the Clerk & Master to release $120,343 to Spence for the payment of attorney's fees and expenses. Regions appeals.

## II. Issue

As stated by Appellants in their brief, the sole issue for review is:

Whether the court erred in finding that the Limited Partnership Agreement authorized Lexington Charter, L.P., by and through its General Partner, Gateway Charter, LLC, to engage and pay counsel without the Limited Partner's consent, and consequently in awarding attorney fees.

## III. Standard of Review

The issue involves the interpretation of the parties' LPA. As such, we apply the standard of review applicable to construction of contracts. In ***Pitt v. Tyree Organization Ltd.***, 90 S.W. 3d 244 (Tenn. Ct. App. 2002), this Court explained that

> [t]he cardinal rule in the construction of contracts is to ascertain the intent of the parties. ***Bradson Mercantile, Inc. v. Crabtree***, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) (citing ***West v. Laminite Plastics Mfg. Co.***, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. ***Id***. (citing ***Petty v. Sloan***, 197 Tenn. 630, 277 S.W.2d 355 (Tenn. 1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Id***. (citing ***Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.***, 521 S.W.2d 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Id***. (citing ***Ballard v. North American Life & Cas. Co.***, 667 S.W.2d 79 (Tenn. Ct. App. 1983)). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Id***. (citing ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. ***Id***. (citing ***McKee v. Continental Ins. Co.***, 234 S.W.2d 830 (Tenn. 1950)).

***Id***. at 252.

## IV. Analysis

The following provisions of the LPA are relevant here:

• **Section 2.1 <u>General Rules of Construction</u>**. For the purposes of this

Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) Words of masculine, feminine or neuter gender include the corelative words of other genders. Singular terms include the plural as well as the singular, and vice versa.

• **Section 2.2** <u>**Definitions**</u>. For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, the terms defined in this Section 2.2 shall have the meaning assigned to them in this Section 2.2:

o **General Partner** shall mean Gateway Charter, LLC, a Delaware limited liability company and any other Person or Persons who succeed it in its capacity as general partner of the Partnership, and any additional general partner of the Partnership admitted as provided herein, all of which shall require the approval of the Special Limited Partner, which approval shall be at its sole discretion. If at any time the Partnership shall have more than one general partner, the term "General Partner" shall mean each such general partner.

o **Investment Limited Partner** shall mean Regions Bank, an Alabama banking corporation, and those Persons who replace it as Substitute Limited Partner(s).

o **Limited Partner** shall mean any Investment Limited Partner, Special Limited Partner, Substitute Limited Partner or Supplemental Limited Partner.

o **Net Cash Proceeds** shall mean the net cash (including collection of both principal and interest on any deferred payments) received by the Partnership from a Sale or Refinancing, after payment of all expenses related thereto.

o **Partner** shall mean any General Partner or Limited Partner.

o **Partnership** shall mean the limited partnership continued under this Agreement.

o **Sale** shall mean and include the sale, exchange, condemnation or similar eminent domain taking, casualty or other disposition of all or any portion of the Project which is not in the ordinary course of business, and the sale of easements, rights of way or similar interests in the Property or any other similar items which in accordance with the accounting methods used by the

Partnership are attributable to capital; provided, however, that "Sale" shall not refer to any transaction to the extent gain or loss is not recognized, or is elected not to be recognized, under any applicable section of the Code.

o **Special Limited Partner** shall mean ASB Affordable Housing, Inc., an Alabama corporation, and any Person who becomes a Special Limited Partner as provided herein, in its capacity as a special limited partner of the Partnership.

• **Section 4.5 Distribution of Net Cash Proceeds from a Sale or Refinancing**. Except as provided in Section 10.2 in the event of a liquidating distribution, the Net Cash Proceeds resulting from a Refinancing or from a Sale in excess of the amount applied to Partnership mortgage obligations encumbering the property refinanced or sold shall be distributed and applied in the following order of priority:

(a) To the payment of the expenses of the Sale or Refinancing and the debts and liability of the Partnership then due, excluding obligations to any Partner or Affiliates thereof . . .

• **Section 5.2 Powers**. Subject to Section 5.3 and any other specific provisions contained herein, the General Partner shall have all authority, rights and powers generally conferred by law, including the authority, rights, and powers of a general partner in a partnership without limited partners, and shall have all authority, rights and powers which they deem necessary or appropriate to effect the purposes of the Partnership, including, by way of illustration but not by way of limitation, the following:

. . . (d) Subject to Section 5.3, to employ, contract and deal with, from time to time, Persons, firms or corporations (including any Partner or Affiliate of any Partner) in connection with the management, operation, and disposition of the Partnership business and assets; including, without limitation, contractors, agents, brokers, Accountants and attorneys, on such terms as the General Partner shall determine.

. . . (f) To bring or defend, pay, collect, compromise, arbitrate, resort to legal action or otherwise adjust claims or demands of or against the Partnership.

• **Section 5.3 Restrictions on Authority or General Partner**. The General Partner shall be bound by all Project Documents, and no additional General Partner or Limited Partner shall be admitted without the Consent of the Special Limited Partner (which Consent shall not be unreasonably withheld) and until such Person shall have agreed to be bound by this Agreement (and

assume the obligations of a General Partner hereunder) and by all Project Documents to the same extent and under the same terms as the other General Partner(s). In addition, without the Consent of the Special Limited Partner (which Consent may be withheld or granted in the Special Limited Partners' sole discretion, unless otherwise expressly provided below), the nature of the Partnership's business being taken into account in determining the reasonableness thereof, no General Partner shall:

(v) Make any expenditure or incur any liability on behalf of the Partners in excess of $10,000 which is not identified in any budget Consented to by the Special Limited Partner, except with respect to emergency repairs necessary to protect the safety and comfort of Tenants or the structural integrity of the Project.

• **Section 6.13 <u>Extraordinary Partner Expenses</u>**. Any and all costs and expenses incurred by or on behalf of the Investment Limited Partner, the Special Limited Partner, or the General Partner, in connection with the exercise of the rights and remedies of the Investment Limited Partner or the Special Limited Partner against the General Partner or the rights of the General Partner against the Investment Limited Partner or Special Limited Partner, including, without limitation, the removal of the General Partner, shall be paid by the losing party on demand therefore by the prevailing party. All amounts due to the Investment Limited Partner and/or the Special Limited Partner or the General Partner pursuant to this provision shall bear interest from demand at a rate of the lesser of (i) 9% per annum or (ii) the maximum legally permissible rate. To the extent that it is ultimately determined that no basis exists for actions taken by the Investment Limited Partner and/or the Special Limited Partner or the General Partner in connection with the exercise of its rights and remedies against the other Partners, the Partner taking such actions will not be reimbursed for expenses under this Section 6.13.

In its order granting Lexington Charter's motion for attorney's fees and expenses, the trial court found, in relevant part:

11. Lexington Charter identifies two sections of the Partnership Agreement in Article 5—Rights, Powers and Duties of General Partner: (i) Section 5.2(d)—this section allows the Partnership "**to employ . . . attorneys on such terms as the General Partner shall determine**"; and (ii) Section 5.2 (f) which allows the Partnership "**to . . . defend. . . legal action . . . or demands of or against the Partnership**." These provisions provide the General Partner with the authority to hire counsel on terms it deems appropriate and to defend actions against the Partnership.

- 6 -

12. The Court finds based on the Declarations filed in this cause that the General Partner hired Spence Partners to defend the Partnership in the legal proceeding brought by Regions.

13. The Court finds the appeal Regions filed was a legal action against the Partnership.

14. Lexington Charter identifies one additional section of the Partnership Agreement in Article 4 — Section 4.5(a) - Distribution of Net Cash Proceeds from a Sale or Refinancing. This section provides, in pertinent part, that "**the payment of expenses of the Sale. . . and the debts and liabilities of the Partnership**" have first priority for payment from any excess proceeds.

15. The Court finds that the attorney fees and expenses Lexington Charter seeks to pay are an expense from the sale of Lexington Charter Apartments and a debt and liability of the Partnership. The unrebutted Declaration of Ned Comer establishes these facts.

16. Regions relies on Section 5.3(v) of the Partnership Agreement— Restriction on Authority of General Partner — "**[M]ake any expenditure or incur any liability on behalf of the Partners in excess of $10,000 which is not identified on any budget Consented to by the Special Limited Partner, except with respect to emergency repairs necessary to protect the safety and comfort of Tenants or the structural integrity of the Project**."

17. The Court finds that Section 5.3(v) is inapplicable to the issue before the Court. Section 5.3(v) by its express words only provides a limitation on expenditures or liabilities that the Partnership may incur "on behalf of the Partners in excess of $10,0000. . . ." The attorney fee debt of the Partnership which Lexington Charter seeks to pay is not a liability incurred on behalf of the Partners, but rather is a liability incurred on behalf of the Partnership.

(Emphases in original). Appellants contend that the trial court misinterpreted the LPA and maintain that: (1) the Partnership lacked the authority to incur liability in excess of $10,000; and (2) the attorney's fees in question are not related to the sale of the properties. We disagree.

As the trial court correctly found, the plain and unambiguous language of the LPA, *supra*, "allows the Partnership 'to employ . . . attorneys on such terms as the General Partner shall determine,'" and "section 5.2(f) allows the Partnership 'to . . . defend. . . legal action . . . or demands of or against the Partnership.'" Regions contends that section 5.3(v) of the LPA applies to limit the expenditures to $10,000 or less. We disagree. As set out in context above, section 5.2(v) provides that "no General Partner shall . . . [m]ake any expenditure or incur any liability **on behalf of the Partners** in excess of $10,000." (Emphasis added). The limitation applies only to liabilities incurred "on behalf of the Partners." On appeal, Regions contends that the word "Partners," as used in section 5.2(v), should be read to include "Partnership," but such interpretation belies the plain language

of the parties' LPA.  As this Court has explained that "a limited partnership in Tennessee is viewed 'as an entity separate and apart from the limited partners.'" ***Orlando Residence, Ltd. v. Nashville Lodging Co.***, 213 S.W.3d 855, 863-64 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Dec. 27, 2006) (quoting ***Investors Group I, Ltd. v. Knoxville's Community Development Corp.***, No. E1999-00395-COA-R3-CV, 2001 WL 839837, at *2 (Tenn. Ct. App. July 25, 2001), *perm. app. denied* (Tenn. Jan. 14, 2002)).  Indeed, the LPA defines the terms "partner" and "partnership" separately. As set out in context above, section 2.2 provides that, "Partner shall mean any General Partner or Limited Partner," and "Partnership shall mean the limited partnership continued under this Agreement." Furthermore, section 2.1 provides that "[s]ingular terms include the plural as well as the singular."  As such, the use of "Partners" in section 5.3(v) is simply the plural of "partner"; it cannot be interpreted as "partnership" as urged by Regions.

The sole question, then, is whether Spence's fees and expenses were incurred on behalf of the Partnership.  The trial court held that "[t]he attorney fee debt of the Partnership which Lexington Charter seeks to pay is not a liability incurred on behalf of the Partners, but rather is a liability incurred on behalf of the Partnership."  We agree.  Under section 5.2(f) of the LPA, Spence was hired "to … defend legal actions against the Partnership," and Spence was able to forestall foreclosure of the Partnership properties.  Then, Spence continued to defend the Partnership against Regions' attempt to stop distribution of the assets from the sale of the properties.  This was all done on behalf of the Partnership, not the partners.  Accordingly, section 5.3(v), which addresses liabilities incurred on behalf of the partners was not triggered in this case, and Spence's billings were a "liability of the Partnership" subject to priority payment under section 4.5(a) of the LPA.

## V. Conclusion

For the foregoing reasons, the trial court's order is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed to the Appellants, RB Affordable Housing and Regions Bank.  Execution for costs may issue if necessary.


    s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE