IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 23, 2005 Session

## BELINDA CAROL MCGRORY FORBES v. PHILIP DALE FORBES

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 29063     The Honorable D. J. Alissandratos, Chancellor**

---

**No. W2005-00694-COA-R3-CV - Filed September 30, 2005**

---

This is a post-divorce modification of child support case. The trial court reversed the Divorce Referee and found that the provisions of a Marital Dissolution Agreement unambiguously obligated Father/Appellant to pay child support based upon his stated earning capacity for 1998. Finding that the Marital Dissolution Agreement, by its plain language, is modifiable, we reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Jeffrey Jones of Bartlett, Tennessee for Appellant, Philip Dale Forbes

Leslie Gattas Coleman of Memphis, Tennessee for Appellee, Belinda Carol McGrory Forbes

**OPINION**

Belinda Carol McGrory Forbes ("Plaintiff," "Mother," or "Appellee") and Phillip Dale Forbes ("Defendant," "Father," or "Appellant") were married on May 26, 1984. Three children were born to this marriage: Whitney Forbes (d.o.b. 11/12/86), Katie Forbes (9/22/89), and Ashley Forbes (d.o.b. 6/27/94). On January 5, 1998, Ms. Forbes filed a "Complaint for Divorce" against Mr. Forbes. On December 18, 1998, the parties entered into a Marital Dissolution Agreement ("MDA"). The MDA indicates that Ms. Forbes is to be the primary residential parent for the children. Concerning child support, the MDA reads, in relevant part, as follows:

**THE PARTIES AFFIRMATIVELY ACKNOWLEDGE**
**THAT NO ACTION BY THE PARTIES WILL BE EFFECTIVE**
**TO REDUCE THE AMOUNT OF CHILD SUPPORT AFTER**
**THE DUE DATE OF EACH PAYMENT, AND THAT THEY**

**UNDERSTAND THAT COURT APPROVAL MUST BE OBTAINED BEFORE CHILD SUPPORT CAN BE REDUCED, UNLESS SUCH PAYMENTS ARE AUTOMATICALLY REDUCED OR TERMINATED UNDER THE TERMS OF THIS AGREEMENT.**

The parties agree that the noncustodial parent will pay $1,800.00 as child support to the custodial parent, per month. Said payments are due on the first of each Month beginning November 1st, 1998. No payment may be delivered by the children of the parties.

The parties acknowledge that the amount of cash child support has been agreed upon considering Husband's earning potential (1998 year-to-date earnings of $80,793.86 through October 8th, 1998); his unilateral decision to quit his job at Amdahl; and the uncertainty of his future earning potential.

On February 17, 1999, the trial court entered its "Final Decree of Divorce," which incorporates, by reference, the parties' MDA. On or about May 16, 2002, Mr. Forbes petitioned the lower court for a change of custody making him the primary residential parent of the minor child Katie Forbes. On August 6, 2002, the trial court entered a "Consent Order Amending Previous Order of Custody," which modified the "Final Decree of Divorce" to reflect that Mr. Forbes "shall have custody of Katie Forbes." A hearing on child support was held before the Divorce Referee ("Referee") on December 4, 2002. The evidence adduced at trial was that Mr. Forbes had unilaterally left his job at Amdahl and had subsequently worked at several different jobs, none of which paid income comparable to that he made at Amdahl. During his various jobs, however, Mr. Forbes had continued to pay the $1,800.00 per month in child support that was referenced in the MDA and ordered by the trial court. In order to meet this obligation, Mr. Forbes testified that he had liquidated his retirement account(s). Mr. Forbes argued that his child support obligation should be adjusted for two children and should be recalculated based upon his current earnings, or an average of his recent earnings since his income was based largely on commissions (at his job with Bill Heard Chevrolet) at the time of the hearing. While Ms. Forbes allowed that the support obligation should be adjusted for two children, she argued that Mr. Forbes' child support should nonetheless be based upon his earning potential (based upon his 1998 earnings) at the time of the execution of the MDA, and as referenced therein. Following the hearing, the Referee made the following findings from the bench:

...I think that the terminology of the marital dissolution agreement is probably immaterial to what my decision is going to be. Based on the testimony I've heard and based on my impression of Mr. Forbes, he appears to be a pretty good salesman, but apparently he wasn't able to sell his houses or his remodeling jobs very well, but I think his ability obviously has shown in the last two months, and frankly I'm

amazed that it took him so long to get around to reaching this point in life. On the basis of that, I'm going to divide by two the amount of the earnings for the last two months, which gives me a total of $3,627.00. He is obligated to support two children after the modification of custody, and therefore 32 percent of 3,627 is $1,160.00 per month. I think that that probably is a little bit too high on the basis of the facts that certainly car sales are an up-and-down kind of situation depending on the market and the economy. So I'm going to round this off to $1,000.00 per month as the amount of child support to be paid for Whitney and Ashley.

The Referee did not order Ms. Forbes to pay any support to Mr. Forbes for Katie. On December 10, 2002, Mr. Forbes filed "Defendant's Motion and Notice of Appeal" of the Referee's ruling, which was amended on January 3, 2003.

On January 29, 2003, the trial court entered its "Order Confirming Divorce Referee's Ruling," which set Mr. Forbes' child support obligation at $1,000.00 per month effective January 1, 2003. On February 28, 2003, the trial court entered an "Order on Motion Appealing Divorce Referee's Ruling," in which the trial court specifically denied Mr. Forbes' motion appealing the Referee's decision.

On August 18, 2004, Mr. Forbes filed a "Petition for Change of Custody of Whitney Forbes, Minor Child," seeking to have himself declared the primary residential parent of Whitney. On or about September 16, 2004, an Order was entered granting Mr. Forbes custody of Whitney. This Order resulted in Mr. Forbes having custody of both Katie and Whitney and Ms. Forbes having custody of Ashley. The Order of the trial court also ordered Mr. Forbes to "continue to pay his child support as ordered pending modification of child support by the Divorce Referee." A modification of child support hearing was held on October 26, 2004. Following the hearing, the Referee made the following, pertinent findings from the bench:

On the basis of what I've heard in the way of proof, it's my opinion that [Mr. Forbes'] earning capacity is $33,600.00. On the retroactivity of the order, to me that would mean that Mrs. Forbes [based on her salary of $69,000.00] would owe [Mr. Forbes] on the basis of the change of custody of the two children to Mr. Forbes $1,300.00 a month, and that would be for the months of June, July, August, September and October, which is a total of $6,500.00. For those same five months Mr. Forbes would have owed for the one remaining child in my opinion $475.00 a month. Instead he's been paying 1,000. So he has paid a total of $5,000.00 during that same period of time. So you need to mathematically calculate that difference and if I have done it properly, I think that she owes him

-3-

about $1,500.00 for the months of June, July, August, and September and October.

From this point forward it would seem, with the offset of what he should be paying and what she should be paying that Mrs. Forbes owes Mr. Forbes for the support of the two children with him $825.00 per month. And that order will be effective November the 1st of this year of 2004.

On November 8, 2004, the trial court entered an "Order on Defendant's Petition for Modification," which incorporates the above findings of the Referee as follows:

1. The Plaintiff's income for purposes of child support is $69,000.00 per year. Her monthly child support obligation for the two children in the custody of the Defendant is $1,300.00 per month.

2. The Defendant's income for purposes of child support is $33,600.00 per year. His monthly child support obligation for the one child in the custody of the Plaintiff is $475.00 per month.

3. Beginning October 21, 2004, the Plaintiff shall pay to the Defendant a sum of $825.00 per month as child support. All previous orders of child support shall no longer be in effect as of October 21, 2004.

4. The arrearage of child support owed by the Plaintiff to the Defendant is a sum of $1825.00 per month for the five months from May 21, 2004 to October 21, 2004, or a total arrearage of $9,125.00.

On October 29, 2004, Ms. Forbes filed a "Motion Appealing Divorce Referee's Ruling". A hearing on Ms. Forbes' Motion was conducted by the trial court on January 7, 2005. Following the hearing, the Chancellor made the following, relevant, findings from the bench:

What did the Court approve [in incorporating the MDA into the Final Decree of Divorce]? This is the total background that the parties chose to give to this issue [child support]. There's nothing in here about the father at that time saying: I have some bad feelings about whether or not I'm going to have to be closer to home because of my children and the future.

See, had those things been expressed, perhaps there wouldn't have been agreement by the parties; perhaps there would have been,

I don't know, because that's not the deal, the agreement, the Court was asked to approve.

It's very simple, and the Court has to give the honest meaning that the parties chose in their contract, not just with each other but with the Court. It's a contract on behalf of the wards of the Court, the children.

It says: the parties acknowledge that the amount of cash child support has been agreed upon considering husband's earning potential (1998 year to date earnings of $80,793.86–that's about as precise as you can get (through October 8, 1998); his unilateral decision to quit his job at Amdol [sic]; and the uncertainty of his future earnings potential.

These last two words in particular, they tell it all. This is what these parties agreed to, this is what they asked the Court to be aware of and to agree to is that he had his earning capacity and potential, this is what he was going to be held responsible to, this is what he asked the Court to hold him responsible to, this is what he negotiated and said to her...and he also agreed and acknowledged, because this is part of their negotiations, obviously, and the Court interpreted it then [at the time Mr. Forbes' child support obligation was lowered to $1,000.00 per month] and interprets it now, that he was biting off a real uncertain economic future because he says: And the uncertainty of his future earning potential. He was saying, despite my hopefulness that my economic future may be better, as everyone naturally has or hopefully has, he says: that's all right. Hold me to this standard, hold me to this economic yardstick.

That's an extremely important concept. The yardstick that these parties wanted to agree to as it relates to dollars, as it relates to child support, was set by the parties in stone.

The only exception this Court can see to this is the impossibility to perform, and I dealt with that earlier when I said if he became disabled and unable to be employed or so disabled as to be substantially diminished in his ability.

\*                                   \*                                   \*

Therefore, respectfully but emphatically, he's going to be held to the yardstick that he asked to be held to all along, and with all due

respect, absent something that is beyond his ability, such as physical or mental disability such that renders him either totally or substantially incapable of gainful full-time employment, I can't think of any exceptions–there may be, but I sure can't think of one because he said: This is the yardstick I want to apply about a very simple, narrow issue, which is: How much money am I imputed to be able to earn for child support purposes? And he put the dollar amount on here to the very penny, and that was his choice just as it was his choice to come to this Court and say: I join in the request that you approve this. And the Court did.

On March 3, 2005, the trial court entered its "Order on Motion Appealing Divorce Referee's Ruling," which reads, in pertinent part, as follows:

1. The Divorce Referee's Ruling as to Defendant's earning capacity shall be reversed based upon the construction of the Marital Dissolution Agreement executed by the parties.

2. Defendant's income for child support purposes is $105,000.00 based upon Defendant's earning capacity as [set] forth in the Marital Dissolution Agreement. His monthly child support obligation for one (1) minor child is $1,321.00.

3. Plaintiff's income for child support purposes is $69,000.00. Her child support obligation for two (2) minor children shall be in the amount of $1,362.00.

4. Plaintiff shall pay to Defendant the difference between $1362.00 and $1321 which equals $42.00 per month, retroactive from May 21, 2004.

5. Plaintiff owed child support to Defendant in the amount of $42.00 per month for the five (5) months from May 21, 2004 to October 21, 2004 which totals $210.00. Plaintiff received from Defendant $1,000.00 per month in child support for the five (5) months from May 21, 2004 to October 21, 2004. Plaintiff has paid Defendant child support and back child support in the amount of $7,945.00. Accordingly, Plaintiff has overpaid Defendant in the amount of $7,735.00. Therefore, Defendant shall pay to Plaintiff the difference of $7,735.00 and $5,000.00 which equals $2735.00.

Mr. Forbes appeals and raises one issue for review as stated in his brief:

Did the Father contractually agree in the Marital Dissolution Agreement of 1998 to fix his income for purposes of child support at a minimum of $105,000.00 per year?

In the event that this Court finds that Mr. Forbes did not contractually obligate himself to a fixed income of at least $105,000.00 for child support purposes, Ms. Forbes raises the additional issue of whether Mr. Forbes met the burden of proof to show a diminished earning capacity.

The primary issue before this Court is whether the 1998 MDA allows for a modification in child support. It is well settled in Tennessee that a "MDA is a contract and as such generally is subject to the rules governing construction of contracts." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn.2001) (citations omitted). We note, however, that a provision in a divorce decree for the care, custody and control of minor children "shall remain within the control of the court and be subject to such changes or modifications as the exigencies of the case may require." T.C.A. § 36-6-101(a). Our courts have accordingly held that when a marital dissolution agreement with regard to the care and custody of the child(ren) is incorporated into a final decree, it is considered to have merged into that decree. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 314 (Tenn.Ct.App.2001). Such agreements thereby lose their contractual nature and remain subject to the court's continuing jurisdiction, so that they may be modified as circumstances change. *Hill v. Robbins*, 859 S.W.2d 355, 358 (Tenn.Ct.App.1993). The parties cannot bargain away the court's continuing jurisdiction over the care of the child and cannot irrevocably agree to the best interests of the child without regard to future developments or changes of circumstances. That being said, it is well settled in Tennessee that court judgments are to be construed like other written instruments. *See, e.g., Gray v. Estate of Gray*, 993 S.W.2d 59, 63-64 (Tenn. Ct. App. 1998) (citing *Livingston v. Livingston*, 58 Tenn.App. 271, 429 S.W.2d 452, 456 (1967)). "Since the interpretation of a contract is a matter of law, our review is *de novo* on the record with no presumption of correctness in the trial court's conclusions of law." *Witham v. Witham*, No. W2000-00732-COA-R3-CV, 2001 WL 846067, at *3 (Tenn.Ct.App. July 24, 2001) (citing *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn.Ct.App.1993)).

In *Pitt v. Tyree Organization Ltd.*, 90 S.W.3d 244 (Tenn.Ct.App.2002), we discuss the rules concerning construction of a contract:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn.Ct.App.1999) (citing *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn.Ct.App.1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id*. (citing *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Id*. (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*., 521 S.W.2d

578 (Tenn.1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Id*. (citing *Ballard v. North American Life & Cas. Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983)). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Id*. (citing *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn.Ct.App.1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *Id*. (citing *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (1950)).

*Id*. at 252.

All provisions of a contract should be construed as in harmony with each other if such construction can be reasonably made so as to avoid repugnancy between the various provisions of a single contract. *See Bank of Commerce & Trust Co. v. Northwestern Nat'l Life Ins. Co.*, 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380 (1930); *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992).

From our review of the record, it appears that, in reversing the Referee, the trial court focused attention solely on the paragraph of the MDA that reads:

> The parties acknowledge that the amount of cash child support has been agreed upon considering Husband's earning potential (1998 year-to-date earnings of $80,793.86 through October 8th, 1998); his unilateral decision to quit his job at Amdahl; and the uncertainty of his future earning potential.

While we concede that this paragraph, taken by itself, indicates an agreement whereby the child support obligation will be based upon Mr. Forbes' stated earning potential (i.e. approximately $105,000.00 per year), we cannot, under the basic laws of contract interpretation, take this paragraph of the agreement out of its full context. As set out above, the first paragraph under the heading "Child Support" states, in relevant part (and in bold and capital type), that "...Court approval must be obtained before child support can be reduced...." These words cannot be overlooked as they indicate an acknowledgment by the parties that child support could, indeed, be modified at some later point.

Furthermore, in the second paragraph under the heading "Child Support," the parties agree that the "**noncustodial parent** will pay $1,800.00 as child support to the custodial parent, per month..." (emphasis added). Since the drafting of that portion of the MDA, two of the parties' three children have come to reside with Mr. Forbes; consequently, an ambiguity has arisen as to which of these two parties is the "noncustodial parent." Applying the most strict construction to that portion

of the MDA, and in consideration of the new circumstances (i.e. the majority of the children now living with Mr. Forbes), Mr. Forbes should be considered the custodial parent and Ms. Forbes, under this strict reading, should pay to him $1,800.00. After all, paragraph three of the MDA (which the trial court analyzes thoroughly) only indicates that the amount of child support is based upon Husband's earning potential; the paragraph does not, however, when viewed in light of the preceding paragraph, necessarily bind Husband to pay this support. Rather, it binds the noncustodial parent, whomever that might be.

However, that being said, we operate under the premise that the cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn.Ct.App.1999) (citing *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn.Ct.App.1984)). When we read the paragraph making Husband's earning potential the basis for the support obligation in the context of the remaining paragraphs under the "Child Support" heading, we can only conclude that the parties agreed that child support could be modified (specifically, "reduced") with the court's approval. From the record, it appears that the trial court, at least at the time of the first modification (i.e. lowering Mr. Forbes' support payments to $1,000.00) was of the opinion that the MDA could be modified.

The trial court's "Order on Motion Appealing Divorce Referee's Ruling," dated March 3, 2005, is premised entirely on the trial court's construction of the MDA. This order does not specifically reverse the Referee's findings from the October 26, 2004 hearing but only holds Mr. Forbes to the perceived terms of the MDA. Having reviewed the transcript of the October 26, 2004 hearing, we find that the evidence does not preponderate against the Referee's findings. For the foregoing reasons, we reverse the trial court's Order of March 3, 2005 and reinstate the trial court's previous Order of November 8, 2004. However, since these parties have been operating under the March 3, 2005 Order pending this appeal, we remand for a determination of any over-payments or under-payments of child support. Appellee's request for attorney's fees is denied. Costs of this appeal are assessed one half to Appellant, Philip Dale Forbes, and his surety, and one-half to Appellee, Belinda Carol McGrory Forbes.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.