IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2018 Session

## KATHLENE DENISE ROBERTS v. WILLIE DINO ROBERTS, JR.

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI12-119      Laurence M. McMillan, Jr., Chancellor**

———————————————————

### No. M2017-00479-COA-R3-CV

———————————————————

Husband appeals the trial court's decision in this post-divorce marital property dispute, arguing that the trial court erred in finding that certain retirement benefits "matured" in 2012. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

H. Reid Poland, III, Clarksville, Tennessee, for the appellant, Willie Dino Roberts, Jr.

Mark A. Rassas, Clarksville, Tennessee, for the appellee, Kathlene Denise Roberts.

## OPINION

### Background

On March 2, 2012, Plaintiff/Appellee Kathlene Denise Roberts ("Appellee" or "Wife") filed a complaint for divorce against Defendant/Appellant Willie Dino Roberts, Jr. ("Appellant" or "Husband") in the Montgomery County Chancery Court. In her complaint, Appellee asked that the court enforce a marital settlement agreement executed by the parties in September 2008. Relevant to this appeal, the agreement provided as follows:

### IX. DIVISION OF MILITARY RETIRED PAY

The parties agree that the Wife has an interest in the Husband's military retirement plan with the U.S. Army, and is entitled to the Husband's assignment of benefits to the Wife in compliance with Federal Law.

The parties were married for a period of seven years during which the Husband performed seven years of creditable military service.

The parties acknowledge that any applicable rights of the Husband under the Servicemembers Civil Relief Act have been observed.

The parties hereby agree that the Wife is awarded fifty per cent (50%) of the Husband's disposable military retired pay as her separate property. If the Wife qualifies for a direct payment from the appropriate military finance center, the Husband agrees to provide any necessary forms or other information necessary to accomplish this designation.

"Military retired pay" means the full monthly military retired pay the Husband would be entitled to receive before any statutory, regulatory, or elective deductions are applied. It includes retired pay paid or payable for longevity or active duty and/or reserve component military service and all payments paid or payable under the provisions of Chapter 61 of Title 10, United States Code. Military retired pay also includes all amounts of retired pay the Husband actually or constructively waives or forfeits in any manner and for any reason.

The Wife will receive the same proportionate share of any cost of living increases as part of her property interest in the Husband's military retired pay. Said payments shall continue to the death of either party, and shall not terminate upon the remarriage of Wife.

The Husband agrees he will not pursue any course of action that would defeat, reduce, or limit the Wife's right to receive the share of his military retired pay awarded herein. The Husband shall indemnify and hold harmless the Wife for any breach of this provision from funds of whatever source.

The Husband guarantees to the Wife that he shall not merge his military pension and any possible future government pension, nor take any action so as to defeat the Wife's right to share in the monthly retirement benefits as set forth in this Agreement. The Husband guarantees this and agrees to indemnify against any breach by him and agrees to hold the Wife harmless against any such breach.

On March 21, 2012, Appellant answered the divorce complaint, asserting that the agreement should not be enforced due to the circumstances surrounding the execution of the agreement, as well as changed circumstances in the parties' lives in the four years since the agreement was signed.

On August 31, 2012, the parties filed an executed marital dissolution agreement ("MDA") incorporating much of the language of the 2008 agreement concerning military retirement pay. Specifically, the MDA stated

> The parties hereby ratify and agree to the terms of the Marital Separation Agreement dated September 18, 2008 and attached hereto as Exhibit A, with the following exceptions:
>
> a. Section IX, "Division of Military Retired Pay" . . . is hereby amended, first, that the parties have been married in excess of eleven years, rather than seven years, and is further amended so as to award the Wife 45%, rather than 50%, of the Husband's disposable military retired pay as her separate property.

The 2012 MDA therefore provided

> The Wife is awarded 45% of the total amount of the Husband's disposable military retired pay from the United States Army. The Parties were married in excess of ten years, during which time the Defendant served on active duty with the United States Army.
> The first such payment shall be received by the Wife no later than September 5, 2012. . . .
> It is the Court's intention that if the Plaintiff receives a deduction from his military retirement pension, such as for an election of VA disability, then the percentage of the military retirement pension will be adjusted to equal the same dollar sum as if no disability or similar deduction was made.

The MDA also provided for an award of attorney's fees for future enforcement actions. On September 4, 2012, the trial court entered its final decree of divorce incorporating, ratifying, and approving the parties' MDA. Appellant immediately began paying Appellee $1,424.70 per month, which the parties understood to represent Appellee's share in Appellant's retirement income.

The parties proceeded without issue for several years. In March 2016, however, Appellee filed a petition for criminal contempt against Appellant for his failure to pay the ordered military retirement pay. According to the petition, Appellant made all required payments following the divorce until February 2016. Appellee alleged that when she questioned Appellant, he stated that it was no longer his intention to make the payment to Appellee. In addition to his failure to make the required payments, Appellee asserted that Appellant had also failed to provide her with information regarding the designation of Appellee as Appellant's survivor for purposes of benefits, as well as any cost of living increases received by Appellant since the divorce; Appellee asserted that both were

required under the parties' MDA. As such, Appellee asked that Appellant be found in criminal contempt and that judgment for the arrearage be entered.

On April 7, 2016, Appellant's counsel filed a notice of appearance, which raised "all . . . objections and defenses" under Rule 12.02 of the Tennessee Rules of Civil Procedure. Over a month later, Appellant filed an answer denying the material allegations in Appellee's petition. At some point, Appellant resumed the payments upon the advice of counsel but soon terminated the payments once again.

At a September 2016 hearing on the contempt petition, Appellant failed to appear. The trial court therefore entered an order requiring Appellant to appear before the court in November to show cause why he should not be held in contempt based upon Appellee's petition.

On November 15, 2016, the trial court entered an order following the November hearing. Therein, the trial court noted that despite being notified of the pending proceedings and hearing dates, as well as initially retaining counsel, Appellant failed to respond to discovery, failed to appear at the September hearing, and failed to appear at the November hearing.[1] The trial court noted that Appellee had orally moved to amend her petition to add a request for civil contempt, which the trial court granted. The trial court thereafter found Appellant in civil contempt, reserved the issue of sentencing, and entered a default judgment against Appellant for the arrearage in the amount of $11,347.00, along with $1,250.00 for attorney's fees.

On November 18, 2016, Appellant, through newly retained counsel, filed a motion to set aside the default judgment, asserting that there was a miscommunication that resulted in him not being present for the hearing. Appellee argued against setting aside the default judgment, noting Appellant's history of failing to appear. Nevertheless, Appellee agreed to set aside the default if Appellant would appear at a January hearing. The trial court therefore entered an order taking the motion to set aside under advisement and stating that the default would be set aside if Appellant appeared at the January hearing.

Appellant appeared at the January hearing. Although no pleadings indicate that either Appellant or Appellee had specifically requested declaratory judgment on any issue, at the beginning of the hearing, the trial court noted that the case involved "a declaratory judgment aspect" and ruled that the pleadings would be amended to conform to the evidence pursuant to Rule 15.02 of the Tennessee Rules of Civil Procedure.[2] The

---

[1] Appellant's counsel was permitted withdraw in the time between the two hearing dates on the basis of a breakdown in communication with Appellant.

[2] Rule 15.02 provides, in relevant part,

> When issues not raised by the pleadings are tried by express or implied consent

trial court further ruled that it would bifurcate the proof and consider the declaratory judgment action first. Because the proof was largely duplicative, we will consider the testimony presented with regard to each phase of the hearing together.

Appellant, Appellee, and Appellant's girlfriend were the only witnesses. Appellant admitted that although he immediately began paying 45% of his military retirement to Appellee at the time of the divorce, a payment of $1,424.70, he temporarily terminated the payments in February 2016. Appellant admitted that the reason that he initially terminated the payments was because he "didn't think [Appellee] needed [the payment] anymore." Appellant conceded that his current girlfriend had sent Appellee text messages indicating that the purpose for stopping the payments was a belief that Appellee was victimizing Appellant and that Appellee was "greedy." Later in the hearing, husband maintained that the decision to terminate the payments was his alone and resulted from a change in his disability status.

Appellant also agreed that he previously and currently receives three checks from the federal government: (1) social security representing a 100% disability; (2) a Veterans Affairs ("VA") check for 100% disability; and (3) a military retirement check. In conjunction with Appellant's testimony, a "Retiree Account Statement" detailing Appellant's "US Military Retirement Pay" details a November 20, 2012 payment to Appellant for "gross pay" of $3,442.00 less the following deductions: (1) "VA waiver" of $276.00; (2) "SBP costs" of $223.73; and (3) "SITW" of $10.00, resulting in net pay in the amount of $2,932.27.[3] The statement noted, however, that Appellant was "exempted from taxes due to [Appellant's] disability status."

Appellant further testified that at the time of the divorce, he was "on the temporary retired list" due to a traumatic brain injury ("TBI") and post-traumatic stress disorder ("PTSD"). Appellant agreed that he "spent three years on the temporary retired list" and became "officially retired" in 2015. It was not until 2016, however, that Appellant stopped the payments to Appellee. Although the testimony was not entirely clear, Appellant testified that his current retirement was also based upon disability, rather than retirement, as his temporary disability retirement existed only until he was finally approved for full disability retirement. When asked about his current VA benefits, Appellant testified that he did not know and appeared to admit that he had never provided documents surrounding his current pay to Appellee in discovery. Other than the

---

of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

[3] Neither the deductions for "SBP costs" nor "SITW" were explained in the record, although SITW most likely refers to state income tax withholding. At the time of the divorce, Appellant lived in South Carolina.

November 2012 retiree account statement, no documents were admitted during Appellant's testimony. Appellant testified, however, that because of his medical issues, he often had trouble understanding paperwork.

In Appellee's testimony, she detailed the number of payments Appellant had failed to make; according to Appellee, she was owed approximately $15,000.00 in unremitted payments. During the hearing, it was clear that Appellee abandoned any claim to cost of living increases.

At the conclusion of the proof on the declaratory judgment action, Appellant's attorney made the following argument:

> Your Honor, just basically he went on a temporary disabled retirement list during this period of time, prior to the time that they did get this divorce. That is a temporary list. It is not a permanent retirement, so our argument is that it had not vested at the time of the divorce and that everything that he has got is disability.

The trial court ruled that it would take the matter under advisement and ordered the parties to file proposed findings of fact and conclusions of law. Following the proof regarding the contempt petition, the trial court found Appellant not guilty of criminal contempt. Counsel for Appellee thereafter indicated that Appellee would seek a finding of civil contempt against Appellant in her proposed findings of fact and conclusions of law, on the basis of the trial court's modification of the pleadings.

Each party thereafter filed their proposed findings of fact and conclusions of law. Appellant's proposed findings were as follows:

> 1. That the parties were granted a Final Decree of Divorce in 2012 by this Honorable Court which granted [Appellee] 50% of the military retirement of [Appellant]. [Appellant] was on the temporary disabled retirement list at the time of the divorce.[4]
> 2. [Appellant] was medically retired From the US Army on 19 February 2015.
> 3. [Appellant] believed that the medical retirement and his Veteran's Administration disability was not divisible. [Appellant] has be[en] diagnosed with PTSD and TBI and receives 100% disability.
> 4. [Appellant] believed he was not responsible for retirement payments to the [Appellee] because he was only receiving disability.

---

[4] There is no dispute, however, that Appellee was awarded only 45% of Appellant's military retirement benefits.

5. [Appellant] contends that the medical retirement he currently receives is not divisible.

Appellant cited no legal authority in his conclusions of law section, but asserted that Appellant should be "relieved of any payments related to retirement because he is 100% medically disabled and has been so since prior to the divorce." In contrast, Appellee's proposed findings of fact and conclusions of law asserted that she was entitled to a judgment against Appellant for all unpaid past payments, a declaration that she was owed "the same dollar amount" in payments in the future, and attorney's fees.

The trial court eventually entered an order finding that Appellant was not in criminal contempt and that civil contempt had not been alleged in the petition. With regard to arrearages and future payment of military benefits, the trial court adopted Appellee's proposed findings of fact and conclusions of law. As such, the trial court found that Appellant was not permitted to terminate the payment to Appellee and that the parties understood that Appellee would receive 45% of benefits regardless of its designation. The trial court further found that Appellant was on "a retired status" at the time of the 2012 divorce and that Appellant's social security and VA benefits were "in addition to and not deducted from his military retirement check." Based on these findings, the trial court ruled that Appellant owed Appellee $1,424.70 per month representing his military retirement benefits and reduced the arrearage to a judgment of $14,196.40. The trial court also awarded Appellee $1,250.00 in attorney's fees. Appellee filed a motion to alter or amend, which was granted to the extent that the trial court clarified that its decision to deny Appellee's request to hold Appellant in civil contempt was based upon Appellee's failure to present sufficient proof and that the award of attorney's fees was based upon the MDA. Appellant thereafter appealed to this Court.

## Issues Presented

Appellant raises a single issue in this case: Whether "[t]he trial court erred in finding that Appellant's military retirement payments to Appellee began in 2012 when Appellant did not officially retire from the U.S. Army until February 19, 2015." Appellee also seeks an award of attorney's fees incurred on appeal.

## Standard of Review

Following a bench trial, the trial court's findings of fact are reviewed de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is de novo. ***Blair v. Brownson***, 197 S.W.3d 681, 684 (Tenn. 2006) (citing ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***4215 Harding Road Homeowners Ass'n.***

*v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

This case involves the interpretation of the parties' MDA. Because MDAs are contracts between the parties, interpretation of an MDA is governed by the rules governing construction of contracts. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). As we have explained,

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999) (citing *West v. Laminite Plastics Mfg. Co.*, 674 S.W.2d 310 (Tenn. Ct. App. 1984)). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. *Id.* (citing *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955)). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Id.* (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578 (Tenn. 1975)). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Id.* (citing *Ballard v. North American Life & Cas. Co.,* 667 S.W.2d 79 (Tenn. Ct. App. 1983)). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Id.* (citing *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526 (Tenn. Ct. App. 1981)). Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made. *Id.* (citing *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830 (1950)).

*Pitt v. Tyree Organization Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Interpretation of an MDA is question of law, which we review de novo. *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003).

**Analysis**

**I.**

We begin with Appellant's argument that the trial court erred in finding that Appellee's entitlement to a portion of Appellant's retirement pay began as of the 2012 divorce date, rather than the 2015 date that Appellant became "fully retired."[5]

---

[5] Appellant also expends considerable effort in his brief on the criminal and civil contempt petitions, giving particular attention to whether the civil contempt issue was properly pleaded. We note,

Specifically, Appellant states in his brief that he "does not contest that [Appellee] has an interest in part of his military retirement[,]" but rather raises the question of "when said military retirement matured and began being due, 2012 or 2015?" As such, Appellant characterizes the dispositive question in his brief as "when does [Appellant's] retirement begin?" Indeed, Appellant makes a distinction between when Appellant was on the temporary disabled retirement list in 2012 and when Appellant was "fully retired" on February 19, 2015. Appellant therefore asks that this Court reverse the trial court's ruling and instead rule that Appellant's obligation to pay military retirement to Appellee "began on March 1, 2015."

Other than a single federal case cited in a footnote, discussed *infra*, Appellant cites various Tennessee and other state court decisions purportedly concerning the maturation date of a retirement pension. Specifically, Appellant asserts that Appellant's retirement account did not become "mature," i.e., "become ready for payment," until Appellant was fully retired, rather than merely placed on the temporary disabled retirement list, citing ***Kendrick v. Kendrick***, 902 S.W.2d 918, 921 (Tenn. Ct. App. 1994) ("A pension interest is mature when an employee has satisfied all the conditions required to receive a retirement benefit and has an immediate right to that benefit."). Additionally, Appellant contends that Tennessee law requires that a retiree meet all of the "terms and conditions" of the "retirement contract" in order to qualify for a retirement benefit, quoting ***Felts v. Tennessee Consol. Ret. Sys.***, 650 S.W.2d 371, 372 (Tenn. 1983).

A review of the caselaw cited by Appellant, the evidence presented at trial, and the parties' MDA demonstrates that Appellant's argument is not well-taken. As an initial matter, we note that the quote cited by Appellant from ***Felts*** is taken from a statute governing retirement benefits to state judges. *See **id.*** at 372 (citing Tenn. Code Ann. § 17-301, effective in 1965 at the time of the judge's retirement).[6] Despite Appellant's reference to a "retirement contract" in his appellate brief, Appellant presented no retirement contract at trial nor does he cite a single statute applicable to military retirement benefits to support his argument that the "terms and conditions" of Appellant's

however, that Appellant prevailed on both the criminal and civil contempt arguments in the trial court and does not raise either contempt as an issue in the issues presented section of his brief. Appellee also has not raised an issue concerning the trial court's dismissal of her contempt allegations. Given that Appellant prevailed on both the civil and criminal contempt petitions, regardless of whether they were properly pleaded, we will not analyze the propriety of the trial court's ruling on this issue.

[6] Another case heavily cited by Appellant, ***Long v. Long***, No. M2015-00592-COA-R3-CV, 2015 WL 9584393, at *1 (Tenn. Ct. App. Dec. 29, 2015), specifically declines to rule on the substantive issues raised in the case due to waiver, where neither party filed any pleading seeking to determine wife's share in husband's military retirement pay. As such, Appellant cites only the trial court's ruling, which is certainly not binding on this Court. We note that the same is true in this case: the record contains no pleadings asking for the trial court to interpret the retired pay provisions of the parties' MDA. Our holding therefore may have been the same in this case if not for the trial court's oral ruling that it would amend the pleadings to conform to the evidence and allow the parties to present "the declaratory judgment aspect." The record does not reveal which party actually sought this relief.

military retirement had not been met until 2015 in this case. Additionally, from our review of the evidence presented at trial, it appears that there was no dispute that Appellant was no longer serving as active duty military personnel at the time of the 2012 divorce.[7] Rather, the single Retiree Account Statement contained in the record indicates that Appellant was receiving "US Military Retirement Pay" in 2012, regardless of Appellant's testimony that the benefits were for temporary disability retirement. The evidence in the record therefore support's the trial court's finding that Appellant "was on retired status" from the military at the time that he executed the MDA.

Although Appellant does not specifically address the language of the MDA in any fashion in the argument section of his brief, we note that the plain language of the MDA also supports the trial court's finding that Appellee was entitled to her share of the military retirement benefits in 2012. Here, the MDA clearly states that Appellee is entitled to a portion of Appellant's "disposable military retirement pay." The MDA defines "military retirement pay" as including "all payments paid or payable under the provisions of Chapter 61 of Title 10, United States Code" and the totality of the MDA makes clear that Appellee is entitled to a share of any payments that fall within this chapter. Among the provisions of Chapter 61 of Title 10 of the United States Code is a provision governing the temporary disabled retired list. *See* 10 U.S.C. § 1402 (concerning the "temporary disability retired list"). Finally, the MDA specifically states that Appellant will begin paying the benefits to Appellee "no later than September 5, 2012." Thus, considering the military retirement provision of the parties' MDA as a whole, the plain language reveals that the parties intended that Appellee would begin receiving her portion of benefits at the time of the divorce decree, regardless of whether Appellant's retired status was only "temporary" at that time.[8]

As pointed out by Appellee in her brief, we note that military pensions are governed not by state law, but by federal law. As such, divorce courts are limited in how they may dispose of military retirement benefits in their divorce decrees. In ***Mansell v.***

---

[7] Appellant's testimony regarding this issue is somewhat confusing. Specifically, the transcript from the January hearing provides as follows:

> [Counsel for Appellee]: Remember that? And at that time you were not, you were getting retired pay at that time. Do you remember that?
> [Appellant]: Temporary
> [Counsel for Appellee]: Temporary but it was retired pay at that time. You were not wearing a uniform, going to work every day, you were in a retired status, were you not?
> [Appellant]: No sir.

Elsewhere in the transcript, Appellant testifies that he was on the temporary disabled list as early as May 2012 and therefore not serving actively in the military in September 2012 when the payments were scheduled to begin.

[8] Indeed, in his testimony, Appellant testified that the temporary status was merely used because of the three-year process it took to make a final determination as to his permanent retirement status.

***Mansell***, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), the United States Supreme Court ruled that "state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property." ***Id.*** at 589 (citing 10 U.S.C. § 1408, known as the Uniformed Services Former Spouses' Protection Act). This limitation applies when a military retiree elects to receive disability benefits in lieu of retirement benefits, as this type of payment is not considered "disposable retired pay." ***Id.*** (citing 10 U.S.C. § 1408(a)(4)(A) (stating that "disposable retired pay" includes all retirement pay, except, *inter alia*, "in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list)").

Following that decision, the Tennessee Supreme Court held that where a spouse agreed to divide a military retirement pension and later unilaterally decided to waive the pension in favor of disability benefits, the non-military spouse's interest in the pension had vested and could not be reduced by the unilateral action of the military spouse. *See* ***Johnson v. Johnson***, 37 S.W.3d 892, 897–98 (Tenn. 2001), *abrogated by* ***Howell v. Howell***, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017). Later, this Court ruled that federal law did not prevent parties from agreeing in an MDA to divide non-disposable military benefits. *See* ***Selitsch v. Selitsch***, 492 S.W.3d 677, 686 (Tenn. Ct. App. 2015) (citing various cases from other states) ("A careful review of ***Mansell*** reveals that the United States Supreme Court did not preclude spouses from contractually agreeing to divide non-disposable retired pay.").

Following the final decision of the trial court in this case, the United States Supreme Court issued an opinion again curtailing the authority of state courts to work around federal rules prohibiting the division of non-disposable retired pay. *See* ***Howell***, 137 S. Ct. at 1405–06. As such, the Supreme Court ruled that any prior state court decisions holding that a non-military spouse's interest in military retirement vested at the time of the divorce and could not be unilaterally reduced by the military spouse were in error. ***Id.*** at 1406 (invaliding reimbursement or indemnification orders seeking to return the non-military spouse to his or her anticipated income following a waiver of benefits by the military spouse in favor of disability). Although the Supreme Court did not make a distinction between divorce decrees ordered by the court and agreements entered into by the parties, the holding in ***Howell*** casts substantial doubt as to whether state courts may enter divorce decrees of any kind in which the parties seek to divide any service related benefit other than disposable retired pay. *See* ***Vlach v. Vlach***, No. M2015-01569-COA-R3-CV, 2017 WL 4864991, at *1 (Tenn. Ct. App. Oct. 27, 2017) (invalidating a provision in an MDA dividing total retired pay as contrary to the holding in ***Howell***, where this issue was properly raised and argued in the trial court).

From our review of Appellant's brief, however, we conclude that we need not reach the issue of federal preemption in this case. As noted above, Appellant filed no formal pleading in support of his assertion that the MDA should be interpreted so that he was not required to make payments beginning in September 2012 due to his temporary disability retired status, the argument he now makes on appeal. Appellant did, however, make a short oral argument at the conclusion of the declaratory judgment action portion of the hearing, as well as file a document containing proposed findings of fact and conclusions of law following trial. In his proposed findings of fact and conclusions of law, Appellant asserted that "the medical retirement he currently receives is not divisible." Appellant, however, cited no law to support this contention. Moreover, in neither opportunity to present his argument did Appellant in any way argue that the MDA's provisions were preempted by federal law. In fact, from our review, the only legal authority cited in the trial court regarding the divisibility of military disability payments was cited by Appellee in her proposed findings of fact and conclusions law.[9]

The same is true of Appellant's appellate brief, which was filed well after the Supreme Court issued its opinion in *Howell*. Even giving Appellant's statement of the issue a broad reading, Appellant simply does not raise federal preemption as an issue presented in this appeal. Likewise, Appellant's brief cites no federal statutes, nor does he in any way argue that the MDA's provisions are preempted by federal law. Although Appellant does cite *Howell* in footnote, Appellant does not argue that *Howell* in any way prohibits the division of Appellant's military retirement income based upon the facts of this case.[10] Other than a conclusory citation to *Howell*, no caselaw concerning the application of federal law to military retirement benefits is cited by Appellant. In fact, as noted above, while Appellant appeared to contend at trial that he should not be required to pay any of his current benefits to Appellee because they are not "divisible," Appellant abandons this argument on appeal and now seeks only a reduction of his obligation representing the time that he was on the temporary disability retirement list, under the auspices that his retirement had not "matured" until 2015. From our review of the federal authorities, however, a state court's ability to divide military retirement benefits depends not on the temporary or permanent nature of the benefits, but on whether the benefits are disability in nature and result in a waiver of other retirement benefits. *See generally Howell*, 137 S. Ct. 1400 (not discussing temporary benefits); *Mansell*, 490 U.S. 581 (same). Appellant's brief, however, is completely devoid of argument that the payments received by Appellee, either from 2012 to 2015 or currently, constitute a payment of non-disposable property in violation of either the MDA or federal law.

---

[9] Specifically, Appellee cited both *Johnson* and *Selitsch*. We note that Appellee filed her proposed findings of fact and conclusion of law months prior to the Supreme Court's decision in *Howell*, which overruled *Johnson*.

[10] In fact, Appellant only cites *Howell* to point out that it "modified" *Johnson*, the case Appellant actually uses to support his argument. Appellant asserts however, that the portion of *Johnson* cited was not modified, as it does not relate to the central holding of the case.

Rule 27 of the Tennessee Rules of Appellate Procedure governs the contents of appellate briefs and mandates that appellant's briefs contain both a statement of the issues presented for review and an argument setting forth the contentions of the parties with citations to authorities. *See* Tenn. R. App. P. 27(a)(4), (7). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010). "The adversarial system of justice is premised on the idea that 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" ***Malmquist v. Malmquist***, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *11 n.21 (Tenn. Ct. App. Mar. 25, 2011) (quoting ***State v. Northern***, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring in part and dissenting in part)). "Parties must thoroughly brief the issues they expect the appellate court to consider." ***Nunn v. Tennessee Dep't of Correction***, No. M2016-01518-COA-R3-CV, 2017 WL 4776748, at *31 (Tenn. Ct. App. Oct. 23, 2017) (quoting ***Waters v. Farr***, 291 S.W.3d 873, 919 (Tenn. 2009) (Koch, J., concurring in part and dissenting in part)). Where a party fails to designate an issue or develop an argument, this Court may consider the issue waived:

> An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7). . . . By the same token, an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4).

***Hodge v. Craig***, 382 S.W.3d 325, 335 (Tenn. 2012) (citations omitted).

Statutory preemption arguments are not treated differently than other arguments with regard to waiver. In fact, the United States Supreme Court has previously considered whether a statutory preemption argument was waived by the petitioner's failure to timely raise the argument and failure to properly support its argument with the relevant authority prior to appeal. *See* ***Exxon Shipping Co. v. Baker***, 554 U.S. 471, 487, 128 S. Ct. 2605, 2618, 171 L. Ed. 2d 570 (2008)) (citing ***Singleton v. Wulff***, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)) (noting that "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below")). In that case, the Supreme Court declined to overturn the Court of Appeals' decision to address the issue notwithstanding the delay in the trial court, as the issue was left to the Court of Appeals' discretion. ***Exxon***, 554 U.S.at 487. The Court noted, however, that a litigant should not be permitted to "rely on newly cited statutes anytime it wished, [as] a litigant could add new constitutional claims as he went along, simply because he had 'consistently argued' that a challenged regulation was unconstitutional." ***Id.*** Thus, the United States Supreme Court has held that courts have discretion to rule that preemption

arguments were waived by failure to timely raise and properly support arguments to that effect. *See also **Holk v. Snapple Beverage Corp.***, 575 F.3d 329, 336 (3d Cir. 2009) (holding that an express preemption argument was waived where it was not timely and properly presented); ***Wells v. Tennesee Homesafe Inspections, LLC***, No. M2008-00224-COA-R3-CV, 2008 WL 5234724, at *3 (Tenn. Ct. App. Dec. 15, 2008) (holding that "any preemption argument has been waived"). Both the ***Howell*** and ***Mansell*** Courts describe this issue as one of preemption. *See **Howell***, 137 S. Ct. at 1406 (describing the circumstances as "congressional pre-emption"); ***Mansell***, 490 U.S. at 587 (defining the issue as whether state domestic relations law is preempted by federal law with regard to military retirement benefits).[11]

Here, Appellant neither designated preemption as an issue nor argued preemption in the body of his brief.[12] In addition, in clear violation of Rule 27(a)(7)(A), Appellant includes no authority in support of any argument that federal law prohibits the payment of military retirement benefits to Appellee, either beginning in 2012 or currently.[13] Rather, if this Court were to invalidate the parties' MDA on the ground of statutory preemption, we would be doing so largely sua sponte, having had no appellate argument in support of that result from Appellant. To do so would be at odds with our adversarial system of justice. *C.f. **Farmer v. Tennessee Dep't of Safety***, 228 S.W.3d 96, 102 (Tenn. Ct. App. 2007) ("Our system is called an "adversarial system" for a reason.").

Finally, we note that the evidence presented in this case is, at best, confusing as to whether the $1,424.70 payment that Appellee received and seeks to continue receiving actually included non-disposable retirement benefits. While Appellant insisted in his testimony that both his current benefits and his past benefits were disability benefits, Appellant conceded that he receives three payments related to his employment: social security disability, VA disability, and military retirement. Appellant also did not appear to dispute the he has received cost of living adjustments over the years that have increased his pay beyond that reflected in the 2012 statement. The evidence also suggests that Appellee takes no share of either the social security disability or the VA disability. For example, Appellant appeared to admit at trial that in 2012, his VA benefits were "on

---

[11] Additionally, neither Court described the federal law as depriving the state court of subject matter jurisdiction. *See generally **Howell***, 137 S. Ct. at 1402–06; ***Mansell***, 490 U.S. at 583–95. Subject matter jurisdiction, of course, cannot be waived. *See **Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.***, 531 S.W.3d 146, 157 (Tenn. 2017) ("A challenge to subject matter jurisdiction cannot be waived and may be raised at any time.").

[12] Although Appellee raised preemption in her brief, Appellant chose not to file a reply brief. Regardless, reply briefs typically cannot be used to correct deficiencies in initial briefs. *See **Withers v. Withers***, No. W2016-01663-COA-R3-CV, 2018 WL 625119, at *2 n.2 (Tenn. Ct. App. Jan. 30, 2018).

[13] Although Appellant on appeal appears to concede that Appellee is entitled to $1,424.70 beginning in February 2015, in his proposed findings of fact and conclusions of law in the trial court, Appellant asserted that "the medical retirement he currently receives is not divisible." Regardless, the divisibility of retirement benefits, either currently or from 2012 to 2015, is simply not mentioned in Appellant's brief.

top of" his retirement benefits.[14] Indeed, from the single statement contained in the record, it appears that Appellee's $1,424.70 payment results from a 45% share of the gross pay amount less the VA waiver ($3,442.00 – $276.00 = $3,166.00; $3,166.00 x 45% = $1,424.70). This court has previously recognized that even where a military spouse takes disability benefits, it may not necessarily impact disposable retired pay. *Vlach*, 2017 WL 4864991, at *5 (noting that despite husband's election to receive military retirement benefits, "there had been no deduction in his retired pay that he received from the [Defense Finance and Accounting Services] due to his disability benefits"). Appellant, as the party with access to the records concerning his military retirement benefits, must bear the burden to show the reduction in disposable benefits caused by his election of disability benefits. Here, not only has Appellant failed to submit clear evidence to show that any of Appellee's $1,424.70 payment encompasses disability benefits, he has failed to even raise this issue on appeal. As such, we decline to invalidate the trial court's decision to order Appellant to pay this amount both at the time of the divorce and currently.

In sum, the parties' MDA unambiguously provides that Appellee's share of Appellant's military retirement benefits was to begin on September 5, 2012, immediately following the divorce. At that time, the evidence indicates that Appellant was no longer active duty military and was therefore retired for purposes of the maturation of any retirement benefits. All issues concerning statutory preemption are waived. The trial court's judgment is affirmed.

## II.

Finally, Appellee seeks an award of attorney's fees on appeal. The parties' MDA provides as follows:

---

[14] Specifically, the transcript provides:

[Counsel for Appellee]: And today you are not only getting this plus the cost of living, but you are also getting four 100% VA benefits on top of this, aren't you?
[Appellant]: But that was 2012.
[Counsel for Appellee]: But in 2017, as we speak today, how much is your VA check every month?
[Appellant]: I don't know sir
[Counsel for Appellee]: But you get a VA check?
[Appellant]: Yes sir
[Counsel for Appellee]: How much is your Army check?
[Appellant]: I don't know, I don't know
[Counsel for Appellee]: We asked through your attorney months ago that you provide us copies of those, why haven't you provided us copies of those?
[Appellant]: I didn't know. Sir I don't, I don't check my mail often and sorry. I don't know what to do.

> In the event it becomes reasonably necessary for either Party to institute legal proceedings to procure the enforcement of any provisions of this agreement, that Party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

"The Court of Appeals has no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party." ***Eberbach v. Eberbach***, 535 S.W.3d 467, 478 (Tenn. 2017). Although the MDA in this case does not unequivocally mandate an award of fees to the prevailing party, we conclude that an award to Wife is required by the plain language of the MDA under the circumstances of this case. Here, Appellee was required to file this action when Appellant unilaterally terminated his payments to Appellee of her portion of Appellant's military retirement benefits. As such, we agree that an award of fees is appropriate in this case and remand to the trial court for the calculation of reasonable and necessary fees.

## Conclusion

The judgment of the Montgomery County Chancery Court is affirmed and this cause is remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion, including the calculation of Appellee's reasonable and necessary attorney's fees incurred in defending this appeal. Costs of this appeal are taxed to Appellant Willie Dino Roberts, Jr., and his surety.

_____
J. STEVEN STAFFORD, JUDGE